Chicago, Burlington & Quincy Railroad Company v.
John F. Wolfe.

Filed March 20, 1901. No. 9,338.

1. Special Session of Legislature. At a special session of the legislature no business can be transacted except such as is included in the objects of legislation stated in the proclamation of the executive convening the law-making body.

2. ——; Scope of Governor's Call. Section 3, article 1, chapter 72,

Compiled Statutes, was passed at a special session of the legislature held in 1867, and is within the scope of the third object designated by the governor in his proclamation convening the legislature.

3. **Governor's Proclamation.** The entire proclamation of the governor convening the legislature in special session should be considered in determining whether any given act at such session is germane to the objects stated in the call of the executive.

4. **Passenger on Railroad Train:** INJURY: PRESUMPTION. When one is injured while a passenger on a railroad train, the presumption is that such injury was caused by the negligence of the carrier.

5. **Liability of Carrier.** A carrier is liable for damages resulting from injuries sustained by a passenger, unless the latter was guilty of criminal negligence.

6. **Statute:** FOURTEENTH AMENDMENT. Section 3, article 1, chapter 72, Compiled Statutes, does not contravene the fourteenth amendment to the constitution of the United States.

ERROR from the district court for Phelps county. Tried below before BEALL, J.   *Affirmed.*

*J. W. Dewcese, Frank E. Bishop, Webster S. Morlan* and *W. P. Hall,* for plaintiff in error.

*T. J. Mahoney, S. A. Dravo* and *F. J. H. Larson, contra.*

NORVAL, C. J.

In 1894 John F. Wolfe was injured while a passenger on one of the trains of the Chicago, Burlington & Quincy Railroad Company, and for such injury recovered judgment against defendant under section 3, article 1, chapter 72, Compiled Statutes, from which said company brings error to this court.

The brief of defendant is devoted almost wholly to a discussion of the validity of this statute. All arguments presented, save one, have been repeatedly passed upon by this court adversely to the contention of defendant, and we are convinced that the rulings mentioned are right. To the one new point we purpose to devote the principal part of this opinion.

The law attacked, entitled "An act to define the duties

and liabilities of railroad companies" (Session Laws, 1867, p. 88), was passed at a special session of the legislature which met, pursuant to a proclamation of the governor, on May 16, 1867. The constitution of 1866 contains the following limitation on the power of the legislature when convened in special session (General Statutes, 1873, art. 2, sec. 12, p. 55): "But the legislature may, on extraordinary occasions, be convened by proclamation of the governor, and when so convened, shall transact no business except such as relates to the object for which they were so convened, to be stated in the proclamation of the governor." Section 3 of the act whose title is above quoted is the present section 3, article 1, chapter 72, Compiled Statutes, and it is contended that this section is in contravention of said constitutional limitation, in that it is foreign to any of the objects for which that legislature was convened, as stated in said proclamation. The latter is too long to admit of insertion in full here, but we think the law attacked is clearly included in one, if not more, of the objects stated in the proclamation. Among the objects therein specified is one numbered 3, as follows: "3. The revision or amendment of the general incorporation law." Senate Journal, 1867, third session, p. 42. At that time the general incorporation law of the state comprised chapter 25, Revised Statutes, 1866, page 187 *et seq.*, and included in its scope regulations for the incorporation, control, regulation and government of a large number of corporations, including railroad companies, the laws governing the latter being sections 72-122, inclusive, of that chapter. This portion of the general incorporation laws of the state includes many provisions regulating the formation, government and control of railroad corporations, defines their rights and duties, and is as much a part of the general incorporation laws of the state as any other portion of the chapter. There is no doubt that the act of 1867 had an effect to amend the general incorporation laws of the state, and for that reason was germane to point 3 of the call above quoted. Being an

act complete in itself, it was not necessary that it refer to any particular portion of the laws to be amended. *Jones v. Davis*, 6 Nebr., 36; *State v. Page*, 12 Nebr., 386; *Herold v. State*, 21 Nebr., 52.

It is contended, however, that section 3, with the remainder of the act, was enacted pursuant to section 21 of the proclamation, which provided that the legislature take action relating to "the responsibility of railroad companies for damages done to stock · by their employees." It is argued that from an investigation of the origin and progress of the bill through the legislature it appears that, as first introduced, it related wholly to damages to live stock, but that as it progressed it was amended by the insertion of section 3, and that this is evidence that that body construed its power in passing the act and incorporating this section into it as being derived solely from section 21 of the call; and that, therefore, the court is not at liberty to infer that it obtained its authority from any other portion of the proclamation. We do not think that the history of this section is evidence that the legislature construed its authority as contended for. On the contrary, to give full force and effect to the controlling presumption that acts of the legislature are within the limitations of the constitution, unless the contrary clearly appears, we are bound to assume that the legislature looked to the proclamation as a whole with a view to determine whether this amendment to an act which originally was wholly within the purview of one object of the call was not germane to some other portion of the call. The fact that one section of the act may be consonant to one portion of the call, while another section may be authorized by another, does not in anywise militate against the power of the legislature to enact the law. Such an interpretation of the fundamental law would leave out of sight the rule we have already mentioned, and turn the presumptions against the validity of a law, once it is shown that a portion of a bill is not consonant to one portion of a proclamation, though

others may be. It is the duty of this court to uphold, rather than to tear down legislation, and we strain no rule of interpretation in holding that the legislature had ample authority, under sections 3 and 21 of the call to pass the bill. A wide scope for legislation relative to cor- porations is given by section 3 of the call, for it author- izes the revision or amendment of the general incor- poration laws of the state, of which those relating to railroad companies are a part.

To sustain its argument, that the legislature tran- scended the limitations of its power in the respect stated, defendant cites the court to decisions, some of which we will review, with a view to ascertaining whether they are in point here. The principal case relied upon is *Wells v. Missouri P. R. Co.*, 110 Mo., 286. The constitutional limitation placed upon legislatures convened in special session may be assumed to be similar in the two states. The constitution of Missouri also contains the following provision: "The general assembly shall pass laws to cor- rect abuses, and prevent unjust discrimination and ex- tortion in the rates of freight and passenger tariffs on the different railroads in this state, and shall from time to time pass laws establishing reasonable maximum rates of charges for the transportation of passengers and freight on said railroads, and enforce all such laws by adequate penalties." Constitution, art. 12, sec. 14. The governor of that state called the legislature to meet in special session for the purposè, among others, "To pro- vide the legislative enactments necessary or expedient to enforce and execute those laws and principles with reference to railways and railroad companies which the people themselves have enacted and declared in their constitution." The legislature met and enacted a law entitled "An act to provide for the prevention of acci- dents to railroad employees and others, by requiring that switches, frogs and guard rails be properly blocked" (Missouri Session Laws, (Extra Session) 1887, p. 14), and the supreme court of that state very properly held the

act not within the scope of the proclamation, and for that reason unconstitutional. A very cursory examination of the act is sufficient to convince the reader that a law which requires railroad companies to properly block their switches, frogs and guard rails, in order to protect persons from injury, is extremely foreign to the authority given the legislature to enact laws to correct abuses of, and to prevent unjust discrimination and extortion in, freight and passenger rates, and to pass laws establishing reasonable maximum freight and passenger rates. The legislation attempted very clearly did not come within the sweep of the proclamation, assuming that the portion quoted was the only one relating to railroad companies, and was, therefore, *ultra vires*. On the other hand, the act in question here was clearly comprehended in that portion of the call of the governor which asked the legislature to consider legislation relative to revising or amending the general incorporation laws of the state. This is true even though we assume that it was within the power of the governor to limit the legislature to acts merely amendatory or revisory of such laws. The lesser is always included in the greater, and those portions of the laws relating to railroads were a part of the general incorporation laws of the state; hence there is no more doubt that the act came within the scope of the call than there is that the legislation attempted by the legislature of Missouri did not fall within the range of the call of the governor of that state. In *Jones v. Theall*, 3 Nev., 233, the court held that a legislature, under a clause of the constitution similar to ours, has no power at a special session to legislate upon any subjects, except those to which their special attention has been called by the governor, with a view to legislative action thereon. In *Davidson v. Moorman*, 2 Heisk. [Tenn.], 575, the supreme court of that state held that an act of the legislature passed at a special session, which provided that, certain persons shall have a certain time in which to redeem real estate sold under judicial process, was not

within the range of a proclamation of the governor, by which it was called to meet to legislate upon the military and political interests of the state. These cases are clearly not in point on the question before us, for the reasons stated, that the bill in question in this case does come within the purview of one or the other of the sections of the governor's call, and for that reason the legislature did not transcend its power.

It is also contended that the act is not authorized by the call, for the reason that it destroys the defense of contributory negligence, except in case the injured party is criminally negligent, and that there is nothing in the call which would authorize the legislature to deliberate upon or pass an act with that object in view. We take it that the governor has not the power to limit the legislature to some specific subject of general legislation, but that, when he points out to the legislature the general scope of legislation, as he did in both sections 3 and 21 of the call, he has exhausted his powers, and that the legislative branch may then proceed to legislate upon any subject relating to such general head. *People v. District Court*, 46 Pac. Rep. [Colo.], 681; *Baldwin v. State*, 21 Tex. App., 591; *Brown v. State*, 22 S. W. Rep. [Tex.], 596; *Mitchell v. Turnpike Co.*, 3 Humph. [Tenn.], 455; *State v. Shores*, 31 W. Va., 491. The legislation in question is clearly regulative of corporations formed under the general incorporation laws of the state, and, therefore, within the range of the powers conferred upon the legislature by the executive proclamation.

The remaining questions of law may be answered more briefly, having been decided by this court, in one form or another, in numerous decisions, adversely to the contention of defendant, and from which rulings we have no reason to recede.

It is argued that, as the evidence of plaintiff did not establish any act of negligence on the part of defendant which resulted in injury to plaintiff, he failed to make out a cause of action. He did prove that he was a pas-

senger on one of defendant's trains, and that while such passenger he fell from the train and one of his feet was cut off by the passing train. Under such a state of facts this court has a number of times held that a conclusive presumption of negligence on the part of a common carrier arises, on which presumption a party injured is entitled to recover, if damage is proved. *Chicago, R. I. & P. R. Co. v. Zernecke*, 59 Nebr., 689; *Chicago, R. I. & P. R. Co. v. Young*, 58 Nebr., 678, and cases there cited.

Again it is claimed that an examination of the various laws in existence at the time this act was passed, and those passed afterwards, and before the constitution of 1875 was adopted, together with decisions of this court existing at the last named time, all tend to show that it has been and is the policy of the legislature to adopt a rule of liability of railroad companies in exact accordance with such liability as it stood at common law; and that the act should, therefore, be construed to mean that a railroad company should be liable only in case an injury to a passenger occurs through, and was caused by, the negligence of such common carrier. Without citing these acts, which we do not think in any sense tend to establish such rule, we will simply say that if such was the intention of the legislature or of the people who adopted the constitution now existing, there was no necessity to pass the act, for the liability of common carriers contended for already existed at common law, and there was no obscurity to be cleared up or settled by a declaratory statute. The argument is far-fetched, as is evident when we find defendant attempting to bring within the sweep of the rule contended for section 4, article 11, of the constitution, wherein it is provided that the liability of railroad corporations as common carriers shall never be limited; and it is argued that this is a limitation upon the power of the legislature to increase the liability of such common carriers beyond that liability as it existed at common law. As a matter of fact, the reason for the adoption of that section was very

different from that contended for. Railroads and other common carriers were, through clauses inserted in bills of lading, attempting to evade their common law liabilities as carriers; and this clause was put in the constitution, not to prevent the legislature from enlarging their liabilities, but to prevent them from narrowing them, and this clause accomplished that result. *Union P. R. Co. v. Vincent*, 58 Nebr., 171; *St. Joseph & G. I. R. Co. v. Palmer*, 38 Nebr., 463; *Atchison, T. & S. F. R. Co. v. Lawler*, 40 Nebr., 356.

We are also urged to recede from our former definitions of the meaning of the term "criminal negligence" employed in said section. The rulings of this court on said term are many and well known. The definition seems apt and logical, and will be adhered to.

Again, it is argued that the statute is in derogation of the fourteenth amendment of the constitution of the United States. This has been also decided adversely to that contention, and is well sustained by authority and reason. *Chicago, R. I. & P. R. Co. v. Young*, *supra*, and cases cited; *Chicago, R. I. & P. R. Co. v. Zernecke*, *supra*, and cases cited.

Other questions argued in the brief have been so recently presented to this court and examined at great length and with much care, that it seems unnecessary to further discuss them at length. It is sufficient to say that we are content with the soundness of the conclusions arrived at relative thereto, and see no reason for abrogating or modifying them. The statute so strenuously attacked was progressive in its nature. The legislature in passing it took into consideration the fact that since the time the liability of common carriers became fixed at common law through the decisions of courts, the means of travel had been revolutionized. From comparatively safe and easy controlled means of travel invention had progressed until this means had become a complicated and exceedingly dangerous machine, propelled through space at an extremely rapid rate of speed,

and with the workings of which the public were unfamiliar and over which they had not the slightest control. Considering, then, the old law and the mischief that had arisen through the application of the inventive genius of the newer age to the means of locomotion, the legislature rightly conceived that the old law relative to the liabilities of common carriers in the respect indicated by this legislation had become obsolete, and it therefore proceeded to exercise the function for which it had been created, by curing that wherein the old law had become defective and inapplicable to modern conditions. Added to this, perhaps, was the consideration that there was no reason for making common carriers insurers of the safety of personal property confided to them that would not apply with equal force to the owners of that property when their persons were being transported from point to point, except perhaps those indicated by the exceptions contained in this law. It would seem that in law the owner should be at least equal to, if not "A little better than his dog, a little dearer than his horse." This equality the law in question establishes, excepting the common carrier from such liability only in such instances as those wherein his judgment should guide him and prompt him to avoid a threatening danger.

From a careful reconsideration of all our former decisions, and the facts and circumstances connected with the passage of the law, we are of opinion that the law was correctly complied with on the trial in the court below, and that its judgment in the premises should be, and it therefore is,

AFFIRMED.