STATE EX REL. ANACONDA COPPER MINING COMPANY, RELATOR, *v.* CLANCY, JUDGE, ET AL. RESPONDENTS.

(No. 2,043.)

(Submitted February 27, 1904. Decided June 22, 1904.)

*States—Legislatures—Extra Session—Authority of Governor —Proclamation — Statutes — Validity — Uniformity— Judges — Eligibility—Disqualification — Prejudice—Constitutional Law—Due Process of Law—Delay of Justice.*

1.  When convened in regular session, the power of the legislature to enact laws is plenary, except in so far as the Constitution has limited it.

2.  When convened in extraordinary session, the power of the legislature is as absolute as when convened in regular session, except that it is then limited to enacting laws affecting those subjects only that are enumerated in the governor's call, or in his message.

3.  In order to determine whether legislation passed at an extraordinary session of the legislature is germane to the subjects specified in the governor's proclamation, as required by Constitution, Article XI, Section 11, it is incumbent on the court to examine the proclamation as a whole, giving to the language used its ordinary meaning, and a rule of liberal interpretation should be applied, to the end that the legislation be operative.

4.  A proclamation of the governor convened the legislature in extra session in December, 1903, for the purpose of enacting general legislation by which the bias and prejudice of district judges should be made a disqualification of such judges to try any case that may come before them, as well as legislation making suitable provision for the trial of such case or cases in such event. The legislature met and passed the Act of December 10, 1903, amending Code of Civil Procedure, Section 180, so as to provide that, on the filing of an affidavit of prejudice against a district judge, he should no longer act, and also amending Section 615, so as to provide that in such case, if a qualified judge should be called to try the cause within thirty days after such disqualification, no change of venue therefor should be had. *Held,* that such legislation was germane to the governor's call, as required by Constitution, Article VII, Section 11.

5.  Act of December 10, 1903, amending Code of Civil Procedure, Section 180, so as to provide for the disqualification of a district judge by the mere filing of an affidavit of prejudice, is not in violation of Constitution, Article VIII, Section 16, providing the qualifications of district judges; such qualifications being limited to qualities necessary to render the person eligible to the office, without application to his qualifications to try particular cases.

6.  Act of December 10, 1903, amending Code of Civil Procedure, Section 180, so as to provide for the disqualification of district judges on the filing of an affidavit of prejudice, thereupon disqualifying him to further act in the case except to arrange his calendar, notify another judge to try the case, or, if he fails to do so within thirty days, to change the place of trial, etc., and amending Section 615, so that, if another judge is called in within such time, the change of venue shall not be granted, does not contravene, but is in harmony with Constitution, Article VIII, Section 12, providing that any judge of the district court may hold court for any other district judge, and shall do so when required by law, since under the statute, both before and after its amendment, a judge can only be secured to preside for another on the invitation of a resident judge.

7.  Act of December 10, 1903, amending Code of Civil Procedure, Section 180, providing for the disqualification of district judges on the filing of an affidavit of prejudice, is not in violation of Constitution, Article VIII, Section 11, conferring on district courts original jurisdiction in "all" cases in law and in equity, by reason of the fact that the filing of the affidavit, without a determination of the question of prejudice, deprives the judge of jurisdiction, since it is the imputation of prejudice, and not prejudice in fact, that constitutes the disqualification, which imputation is not subject to judicial investigation.

8.  The legislature may deprive a court of discretion in the exercise of its jurisdiction.

9.  Act of December 10, 1903, amending Code of Civil Procedure, Section 180, so as to provide for the disqualification of district judges on the filing of an affidavit of prejudice, is not in violation of Constitution of the United States, Amendment XIV, Section 1, nor Constitution of Montana, Article

III, Section 27, as depriving a litigant of his property without due process of law, in that no notice required to be given of the filing of the disqualifying affidavit, since, as the mere filing of the affidavit works the disqualification, the giving of notice would serve no purpose.

10. A litigant has no constitutional right to have his cause tried before a particular judge, hence a party is not deprived of life, liberty or property by the mere fact that he cannot have his cause tried before the judge of the district where the action was commenced.

11. Since the Act of December 10, 1903, amending Code of Civil Procedure, Section 180, so as to provide for the disqualification of district judges on the filing of an affidavit of prejudice, is general in its terms and operation throughout the state, and therefore sufficiently complies with Constitution, Article VIII, Section 26, requiring all laws relating to courts to have a uniform operation, it is immaterial that it was passed at an extra session of the legislature, called by the governor for the purpose of relieving an industrial condition existing in only three of the populous cities of the state.

12. Code of Civil Procedure, Section 180, as amended by Act of December 10, 1903, provides "that any justice, judge or justice of the peace must not sit or act as such in any action or proceeding when the other party makes and files an affidavit that he had reason to believe and does believe he cannot have a fair trial before a district judge by reason of the bias or prejudice of such judge." *Held* that, though such section as amended was defective in declaring that a "justice" of the supreme court or a justice of the peace should not act as such in any case in the district court, it would be assumed that the word "judge" in the first sentence referred to district judge, and the words "justice" and "justice of the peace" would be disregarded.

13. Code of Civil Procedure, Sections 180, 615, as amended by Act of December 10, 1903, providing for the disqualification of district judges on the filing of an affidavit of prejudice, and declaring that a change of venue shall not be granted for that reason if, within thirty days after the filing of the affidavit, another judge shall be called in to try the case, etc., does not authorize the disqualifying affidavit to be filed after the trial of the case has been begun, after which period no change of venue can be granted.

14. Code of Civil Procedure, Section 180, as amended by Act of December 10, 1903, provides for the disqualification of district judges by the filing of an affidavit of prejudice, upon the filing of which the judge is authorized to transfer the cause or call in another judge to try the same. Section 615 authorizes a change of venue where a judge is disqualified, and as amended by the same Act declares that if a judge is disqualified for prejudice, no change shall be granted if another judge is called in to try the cause within thirty days. *Held*, that such amendatory act was not in contravention of Constitution, Article III, Section 6, guarantying administration of justice without delay, in that it permits a party filing a disqualifying affidavit to prevent further action in case the disqualified judge will not call in another judge, since in that event the opposite party would at once be entitled to a change of venue under Section 615.

15. Act of December 10, 1903, amending Code of Civil Procedure, Section 180, authorizing each party to a suit to disqualify five district judges by filing an affidavit of prejudice, could not be held in contravention of Constitution, Article III, Section 6, guarantying the administration of justice without delay, though it authorizes the successive disqualification of two-thirds of the district judges in the state, in the absence of a showing that the "necessary" consequence of the enforcement of the act will be to deny litigants a speedy trial.

16. Before the court will declare solemn legislative enactments invalid, their unconstitutionality must be established beyond a reasonable doubt.

17. Courts cannot hold legislation invalid merely because it is unwise, or under it great wrongs may be perpetuated, or even because the measure itself is vicious.

APPLICATION by the state, on the relation of the Anaconda Copper Mining Company, for a writ of prohibition against the Second judicial district court and William Clancy, judge thereof. Writ granted.

*Mr. A. J. Shores, Mr. C. F. Kelley,* and *Messrs. Forbis & Evans,* for Relator.

*Mr. John J. McHatton, Mr. T. J. Walsh, Mr. J. M. Denny, Messrs. Toole & Bach,* and *Mr. J. B. Roote,* for Respondents.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On November 10, 1903, the governor of Montana issued his proclamation convening the Eighth legislative assembly in extraordinary session at the capital of the state on December 1, 1903. The purposes for which this assembly was convened are indicated in the preamble to the proclamation. After reciting the fact that a large number of petitions had been addressed to him, asking that the legislature be convened in extra session, the governor continues:

"Whereas, they (certain petitioners) further represent the desirability of general legislation by which the bias and prejudice of district judges be made a disqualification of such judges to try any case that may come before them or either of them, as well as legislation making suitable provision for the trial of such case or cases in such event: * * * Now, therefore, I, J. K. Toole, governor of the state of Montana, * * * do hereby and by virtue of the power and authority in me vested by the Constitution, convene the Eighth legislative assembly in extraordinary session, at Helena, Montana, the capital of said state, at 12 o'clock m., on December 1, A. D. 1903, for the purpose of considering the legislation hereinbefore referred to and taking such action thereon as it may deem wise or expedient."

Pursuant to this call the legislature met and passed two measures, which received the governor's approval and are now before us for consideration. The first of these is entitled "An Act to amend Section 615 of the Code of Civil Procedure." The other is entitled "An Act to amend Section 180 of the Code of Civil Procedure." The ony material change made in Section 615 was to provide that: "If any qualified district judge shall be called in and shall within thirty days after the motion is made, appear and assume jurisdiction of the cause and of all matters and proceedings therein, no change of the place of trial shall be made." Section 180 was amended by adding thereto Subdivision 4, the portions of which material here read as follows: "(4) When either party makes and files an affidavit as hereinafter provided, that he has reason to believe, and does believe, he cannot have a fair and impartial hearing or trial before a district judge by reason of the bias or prejudice of such judge.  *  *  *  Upon the filing of the affidavit the judge as to whom said disqualification is averred, shall be without authority to act further in the action, motion or proceeding, but the provisions of this section do not apply to the arrangement of the calendar, the regulation of the order of business, the power of transferring the action or proceeding to some other court, nor to the power of calling in another district judge to sit and act in such action or proceeding. No more than five judges can be disqualified for bias or prejudice, in said action or proceeding, at the instance of the plaintiff, and no more than five at the instance of the defendant in said action or proceeding.  *  *.  *"

Thereafter an action was pending, ready for trial, in department No. 2 of the district court of the Second judicial district of Montana, which action is entitled *"Anaconda Copper Mining Company, Plaintiff, versus Montana Ore Purchasing Company and Others, Defendants,"* and numbered 8,833 of the files and records of that court. This cause was set for trial for the 10th day of February, 1904. On February 5, 1904, the plaintiff, through its secretary and agent, made and filed an affidavit in

accordance with the provisions of Subdivision 4 of Section 180, as amended by the Act to which reference is made above. The filing of this affidavit was called to the attention of the court; but, notwithstanding this fact, the district judge presiding in the department in which the cause was set for trial, and against whom the affidavit of disqualification had been filed, announced his intention of proceeding with the trial. Thereupon an alternative writ of prohibition was issued from this court, directed to the district court and to the Honorable William Clancy, judge of department 2 thereof, requiring him to desist and refrain from any further proceedings in the cause until the further order of this court. This writ was made returnable, and the matter was argued and submitted in this court, on February 27, 1904.

The two Acts above referred to are companion measures. The amendment to Section 615 is intended to carry into effect the provisions of Section 180 as amended. Numerous objections are lodged against the constitutionality of these Acts. However, no particular infirmity is pointed out respecting the Act amending Section 615. If the Act amending Section 180 is valid, it is quite clear that no constitutional objection can be urged against the other.

1. In the first instance it is contended that the legislation is not within the purview of the governor's call. Section 11, Article VII, of the Constitution provides: "He [the governor] may on extraordinary occasions convene the legislative assembly by proclamation, stating the purposes for which it is convened, but when so convened, it shall have no power to legislate on any subjects other than those specified in the proclamation, or which may be recommended by the governor." There is nothing contained in the governor's recommendations to the legislature, after it convened, in any manner qualifying the terms of the proclamation, so far as the particular measures under consideration are concerned.

It must be borne in mind that the governor is not a part of the lawmaking body. When convened in regular session, the

power of the legislature to enact laws is plenary, except in so far as the Constitution has limited it. (*State ex rel. Sam Toi v. French,* 17 Mont. 54, 41 Pac. 1078, 30 L. R. A. 415.)

The utmost extent of the governor's authority, so far as constructive legislative work is concerned, is to recommend such measures as he shall deem expedient (Section 10, Article VII, Constitution); but there is not any legal or moral obligation resting upon the members of the legislative assembly to follow such recommendations, if they deem them unwise or the measures indorsed inexpedient. When the exigencies of the times require it, the legislature may be called in extraordinary session by the governor to consider particular subjects of legislation. Those subjects must be enumerated in the proclamation or in the governor's message to the assembly, and the power of the legislature is limited to enacting laws affecting those subjects only. (Section 11, Art. VII, above.) In other words, the governor may submit the subjects with reference to which legislation is desired, but the lawmaking body then has absolute power to construct such laws respecting those subjects as it shall see fit (unless restrained by constitutional inhibition), or to disregard the subjects altogether and not enact any measures respecting them.

The governor has the same authority at a special session of the legislature that he has at a regular session—to recommend any particular measures which he may deem expedient; but such recommendation does not measure or limit the legislative authority. That authority is only limited by the scope of the subjects submitted for consideration, and any recommendation respecting a particular measure would not be binding upon the legislative assembly.

In order to determine whether a particular measure is germane to the subjects stated in the governor's proclamation, it is incumbent upon us to examine the proclamation as a whole (*Chicago, B. & Q. R. R. Co. v. Wolfe,* 61 Neb. 502, 86 N. W. 441), giving to the language used its ordinary meaning.

It is fairly deducible from an examination of the proclamation that the governor's purpose in calling the legislative assembly in extraordinary session was to secure, if possible, the enactment of some measure whereby a district judge, charged with entertaining bias and prejudice against a litigant, to such an extent as to engender the belief in the litigant's mind that he could not have a fair and impartial trial of his cause, should not be ·permitted to sit and hear the same. It was not the governor's purpose to advocate any particular measure, but, with this subject for consideration laid before the lawmaking power, to permit it freely to exercise its legislative discretion in framing ·any measure which might accomplish the result sought in calling the members together. To say that because, in his proclamation, the governor specified "general legislation by which the bias and prejudice of district judges be made a disqualification of such judges to try any case," etc., no law enacted in pursuance thereof would be valid which did not expressly declare bias and prejudice a disqualification, would be to lodge in the governor greater power than was ever contemplated by the constitutional provision under consideration. He cannot in advance tie the hands of the legislature. He cannot submit the .draft of a proposed bill, and direct the legislature to enact it, or no measure at all; but any enactment which will meet the ends sought to be accomplished in his call must be deemed to be embraced within the limits of the subjects submitted for consideration. That a liberal rule for the interpretation of these proclamations has been generally applied, to the end that the legislation enacted in pursuance thereof be operative, is apparent from the adjudicated cases. *Chicago, B. & Q. R. R. Co.* v. *Wolfe,* above; *Baldwin* v. *State,* 21 Tex. App. 591, 3 S. W. 109; *In re Governor's Proclamation,* 19 Colo. 333, 35 Pac. 530; *Mitchell* v. *Turnpike Co.,* 22 Tenn. 456.

We are therefore of the opinion that the Act amending Section 180 above is within the purview of the governor's call, and, as the amendment to Section 615 is obviously intended to carry

Section 180 as amended into effect, by providing a means by which all cases in which a district judge is disqualified may be tried, this amendment to Section 615, then, is clearly comprehended within that portion of the proclamation quoted above, which reads: "Legislation making suitable provision for the trial of such case or cases in such event."

2. It is urged that the necessary effect of this Act amending Section 180, in providing for the disqualification of a judge by the mere filing of an affidavit, is to do by indirection what the legislature could not do directly—add to the qualifications prescribed for district judges by Section 16, Article VIII, of the Constitution. That section reads: "No person shall be eligible to the office of judge of the district court unless he be at least twenty-five years of age and a citizen of the United States, and shall have been admitted to practice law in the supreme court of the territory or state of Montana, nor unless he shall have resided in this state or territory at least one year next preceding his election."

It is elementary that the legislature cannot impose any additional conditions to those enumerated above as a prerequisite to any man's holding the office of district judge who might be elected or appointed to that office, and neither do we think that any effort in that direction was made by the enactment of the amendment to Section 180 above.

The qualifications enumerated in Section 16, Article VIII, above, have to do with the eligibility of a man to hold the office, but it does not follow that, because a district judge possesses these qualifications, he shall have a right, by virtue of his office, or otherwise, to try every cause which may be commenced in or transferred to his district. To say that he has such right is to say that he may try a cause to which he is a party plaintiff or defendant, and that his opposing litigant is helpless to prevent it. No such contention can be urged successfully.

The Constitution attempts to prescribe the qualifications without which a man ought not to hold the office of district judge. This Act does not attempt to add to or take from those

constitutional qualifications; in fact, it does not have anything to do with the right or eligibility of any one to hold or exercise the office, but provides the circumstances under which a particular judge, though possessing the qualifications necessary to hold the office, may not try a particular cause. The Act does not in any manner infringe the provisions of the Constitution referred to.

3.    It is contended that this Act amending Section 180 violates that portion of Section 12, Article VIII, of the Constitution, which reads as follows: "Any judge of the district court (may hold court for any other district judge, and shall do so when required by law." There is nothing whatever in the foregoing provision which would indicate an intention on the part of the framers of the Constitution to limit the method of securing the trial of a cause, in which the resident judge is disqualified, to calling in another judge. This provision is simply a means placed in the hands of the judges themselves to facilitate the dispatch of business in which they may be interested or otherwise disqualified from acting. There is no obligation resting upon a particular judge to call in another, and likewise no obligation resting upon an invited judge to accept the invitation. All that was decided in the *Weston Case,* 28 Mont. 207, 72 Pac. 512, respecting this matter, was that the only method by which one judge can be secured to preside for another is upon the invitation of the resident judge himself, and in this respect the provisions of Section 12, Article VIII, are prohibitory. There is nothing in the Act which impinges upon this provision. Under Section 180, as amended, a district judge may be disqualified by the filing of an affidavit provided for in Subdivision 4 thereof. His authority with reference to the particular matter then ceases, except that he may arrange his calendar, invite in another judge to try the cause for him, or, if he invites another judge, who fails to come within thirty days after a motion for a change of venue is made, he still retains authority to change the place of trial. While this constitutional provision lodges in a disqualified judge the sole

power to invite in another judge to try the case in which he is disqualified, it was never intended thereby to enable such disqualified judge, by refusing to call in another judge, or by delaying unreasonably his invitation, to deny altogether to a litigant a trial of his cause.

So that this Act, and Section 615 as amended, not only do not contravene the provisions of Section 12, Article VIII, above, but are subject to a construction in harmony with them. This is the conclusion reached by the Supreme Court of Florida with reference to a somewhat similar statute against which was lodged the same objection now under consideration. (*Thebaut* v. *Canova,* 11 Fla. 143.)

4.  It is also urged that this Act amending Section 180 violates Section 11, Article VIII, of the Constitution, which confers on district courts "original jurisdiction in all cases at law and in equity," etc.

The particular objection made here is that the filing of the affidavit operates *ipso facto* to deprive the judge against whom it is aimed of authority to proceed with the trial of the cause, and that no provision is made at all for determining judicially whether, as a fact, the judge is actually biased or prejudiced, or, in other words, that this Act attempts to determine the question of bias and prejudice in advance, or permits the litigant to do so, whereas that can only be done by a judicial investigation and determination.    But this proceeding to disqualify a judge is analogous to a proceeding for change of venue, and no one has yet denied the right of the legislature to provide for a change of venue upon such terms as it may propose.    The authority to enact such statutes is not derived from the Constitution, but is inherent in the legislature, subject only to the constitutional provision that such laws shall not be local or special. In the absence of any constitutional inhibition, we know of no reason why the legislature might not provide for a change of venue merely upon demand of either party, without assigning any reason whatever.    (4 Ency. Pl. and Pr. 431.)    The mere fact that no provision is made for a judicial determination of

the bias or prejudice of the judge against whom the affidavit may be directed, is not itself sufficient to invalidate this Act.

As a matter of fact, it is not the bias or prejudice of the judge which disqualifies him, but the mere imputation of such bias and prejudice, and that leaves nothing to be judicially determined.

In considering this same objection to a similar statute, this court in *Godbe* v. *McCormick*, 1 Mont. 105, said: "So far as the [first] question is concerned, we do not regard the Act of the legislature as affecting the jurisdiction of the district court. It lays down a rule of procedure, in certain cases, for the observance of the courts in the exercise of their jurisdiction, of the same character as the laws regulating continuance, appeals, new trials, and the entire subject of remedies and of practice."

In this connection it is also said that the Act amending Section 615 seeks to take from the district court its discretion with reference to granting a change of venue and to impose a mere ministerial duty upon a judicial body. But it is not every question arising in court that is entitled to a judicial determination, or with reference to which judicial discretion need be exercised. In *Godbe* v. *McCormick*, above, the court said: "The mere fact that a law requires the performance by a court of a particular act upon a given state of fact is not a sufficient test by which to determine its invalidity, and in many instances the legislature may deprive the court of discretion in the exercise of its jurisdiction." To the same effect is the decision in *Smith* v. *Judge of the Twelfth District,* 17 Cal. 557, where it is said: "It is true that the court, having a discretion as to a particular matter, cannot, so long as it retains that discretion, be controlled in the exercise of it. But the whole error is in forgetting that the court has the discretion only by virtue of the law giving it, and that the same law can take away that discretion as to all matters of remedy, and leave to the court a simple ministerial duty." This doctrine is emphasized by numerous examples in our own practice, as well as elsewhere. A party to an action may amend his pleading once as a matter of

right—a right which the court cannot deny him, and respecting which it cannot exercise any discretion whatever. (Section 773, Code of Civil Procedure.) Each party to a civil action may, by a mere objection, peremptorily challenge four jurors (Section 1059, Code of Civil Procedure), and when these challenges are exercised the court has no discretion in the matter whatever. The jurors challenged may be thoroughly qualified to try the cause, and free from any interest, bias or prejudice, and the challenges may be interposed out of pique, wantonness, or a mere desire to hinder and delay the court, and yet no one can deny the right under our law, or say that the statute is invalid, because it does not require these challenges to be tried and determined by a court. In proceedings to transfer a cause from the state to the federal court on the ground of diverse citizenship, upon filing the requisite affidavit and bond, the state court has no discretion in the matter, but must make the transfer. These examples might be extended, but the foregoing suffice to illustrate the principle that with reference to many judicial proceedings there need not be judicial discretion exercised.

5. It is further contended that the Act amending Section 180 violates Section 1 of the Fourteenth Amendment to the Constitution of the United States, and Section 27, Article III, of the Constitution of Montana, in that no notice is required to be given of the filing of the disqualifying affidavit, and therefore the litigant is denied due process of law. But those constitutional provisions cannot be invoked here. That portion of Section 1 of the Fourteenth Amendment above, to which reference is made, reads as follows: "Nor shall any state deprive any person of life, liberty or property without due process of law." Section 27, Article III, above, reads: "No person shall be deprived of life, liberty or property without due process of law." It is hardly necessary to say that a party is not deprived of life, liberty or property by the mere fact that he cannot have his cause tried before a particular judge. The fact that the Constitution of Montana provides that "any judge of the dis-

trict court may hold court for any other district judge," and that liberal laws for change of venue are on the statute books of this state, sufficiently negatives the idea that a litigant has any right to have his cause tried before the judge of the district where the action was commenced; for, if he has such right, the venue could not be changed to another district, nor could a judge from another district ever preside at the trial of the same. There is a sufficient reason for the rule that notice should be given of most proceedings in course of litigation, but in this instance there can be none. No hearing is to be had upon the matter. The filing of the affidavit itself works the disqualifica-tion, and no purpose whatever could be served by giving notice. (*Livermore* v. *Brundage*, 64 Cal. 299, 30 Pac. 848.) When the reason for the rule ceases, so does the rule itself.

6. It is further said that the Act amending Section 180 is special legislation, and violates Section 26, Article VIII, of the Constitution, and that its terms are so uncertain and unintelligible as to render the Act void. The first of these contentions is based upon the theory that, as the governor in his proclamation referred to the industrial condition existing in three of the populous cities of the state, consequent upon the cessation of operations of certain large industries, and expressed his belief that work would be forthwith resumed in all such suspended operations if an extraordinary session of the legislature was convened to consider certain legislation, and as the extraordinary session did consider and pass this amendment to Section 180, it must result that the legislation was enacted for the express benefit of the people whose industries had been idle, entailing the industrial depression referred to by the governor. But, regardless of the circumstances under which the legislature was called in extraordinary session, or the motives which prompted this particular legislation, we are concerned only with the law itself, and if its terms are general and operate throughout the state, and affect all judges and litigants alike, it meets the constitutional requirements that "all laws relating to courts shall be general and of uniform operation throughout the state;

and the organization, jurisdiction, powers, proceedings and practice of all courts of the same class or grade, so far as regulated by law, shall be uniform." (Section 26, Article VIII, Constitution of Montana.) We need not, therefore, concern ourselves with the place of conception of this measure, or the history or circumstances surrounding its enactment.

Particular stress is laid upon its crudeness and inaccuracy. As amended, Section 180 now reads: "Section 180. Any justice, judge or justice of the peace must not sit or act as such in any action or proceeding * * * (4) when either party makes and files an affidavit as hereinafter provided, that he has reason to believe, and does believe, he cannot have a fair and impartial hearing or trial before a district judge by reason of the bias or prejudice of such judge. * * *" Of course, it was quite gratuitous for the legislature to say that a justice of the supreme court or a justice of the peace should not act as such in any case in the district court, if that is what the Act means. But we are of the opinion that, crude as the measure is, there is yet enough expressed to enable its terms to be carried into execution and to render it intelligible. We must assume that the word "judge," in the first sentence above, refers to district judge; and, if then we disregard the reference to the justices of this court and to justices of the peace, the measure is susceptible of intelligible construction. And while it may appear that we are approaching dangerously near legislation, when we give the interpretation indicated, still we think we have not trespassed on legislative functions in so doing, and prefer to give this construction to the measure in order that the legislative will may be carried out.

7. Does this Act violate Section 6, Article III, of the Constitution, which provides: "Courts of justice shall be open to every person, and a speedy remedy afforded for every injury of person, property or character; and that right and justice shall be administered without sale, denial or delay."

Whatever may be the infirmities of the Act, it is not open to the particular objection that it permits the disqualifying affi-

davit to be filed at any stage of the proceedings. While considered alone, Section 180 as amended would appear to be open to this objection, yet, as said before, these two measures must be construed together; for one is the counterpart of the other, and when this is done, and the terms of Section 180, as amended, limited as they must be, the objection is removed. In the first place, the disqualifying affidavit cannot be filed after the trial of the cause has been begun. This must be so necessarily, for after that stage in the progress of litigation has been reached there cannot be a change of venue. (4 Ency. Pl. and Pr. 426, and cases cited.) It was not intended by this Act to permit a judge to be disqualified in *any* event when a change of venue cannot be had upon the failure of a judge of another district to appear and assume jurisdiction. The very purpose of the amendment to Section 615 would be defeated if a disqualifying affidavit could be filed at any time after a trial had been begun; for that section, as amended, assumes to provide for the trial of all causes in which a judge has been disqualified under Subdivision 4 of Section 180, as amended, and, as we have already said, a change of venue cannot be had after a trial is commenced. It would be absurd to speak of a change of venue, or change of place of trial, after a trial has been had, and while a motion for a new trial, for instance, is pending.

Neither is the Act open to the objection that it permits a party, by filing a disqualifying affidavit, to prevent further action in the case in the event the district judge disqualified cannot or will not secure another judge to try it; for Section 615, as amended, may be taken advantage of by either party, and, if the plaintiff files the disqualifying affidavit, there is no reason why the defendant may not at once apply for a change of venue on the ground that the judge has been disqualified, and, if another judge does not appear within thirty days after such motion is made, the venue must be changed, and the cause then proceed.

It may be that the anomalous situation is presented of a party applying for a change of venue who does not want it, except as

an alternative of no trial at all, or an indefinite postponement of the day of trial while awaiting the coming of another judge; but this only illustrates an infirmity in the measure, which might with propriety be urged upon the lawmaking body, but which does not necessarily affect the validity of the Act.

Finally, it is contended that the necessary effect of the operations of this law will be to prevent the trial of cases altogether, or that such delay and inconvenience will result as will be tantamount to a denial of justice.

Whether either of these results will follow can only be determined from experience in the actual operations of the law itself. We cannot say that such would necessarily be the case, even if in every cause each side would avail itself of the utmost authority provided by the Act and disqualify successively five judges.

We are not aware that a like statutory provision has ever been the subject of construction by the courts of other states. Counsel have been unable to find any such decisions, and doubtless there are none. This dearth of decisions upon the question may be accounted for by the fact that, of the eleven states which have somewhat similar statutes, in ten of them only one change of judge is permitted, and in the other (Iowa) only two. The reasonableness of the measures adopted in those states has doubtless prevented any contests over them.

The possibility that one party even may disqualify five judges, and that successive changes of venue may be granted until the cause is removed for trial to a distant part of the state from the residence of the parties, and that a long time may elapse before a trial can be had at all, only illustrates an extreme case, where a great wrong would be perpetrated, and one's sense of justice is outraged by the infinite abuse of legal rights which may possibly follow the acknowledgment of the validity of such a measure; and yet this, also, is an argument which might with propriety be addressed to the legislative body, but not to a court, for we cannot hold legislation for naught merely because it is unwise, or under it great wrongs may be perpetuated, or even because the measure itself is vicious. The Act

may seem to stand out in striking contrast with similar statutes in Arizona, California, Colorado, Florida, Illinois, Indiana, Missouri, Oregon, Wisconsin and Wyoming, in each of which states the number of judges who may be disqualified is limited to one; but the fact that under this Act two-thirds of all the judges of the state may be disqualified in any one action does not necessarily render it void.   By this we do not mean to say that there is no limit beyond which the legislature may not go. The Constitution has wisely provided that "courts of justice shall be open to every person, and a speedy remedy afforded for every injury of person, property or character, and that right and justice shall be administered without sale, denial or delay;" and whenever it affirmatively appears that any measure has transgressed this provision, it will be held inoperative.   But it must be shown that the *necessary* consequence of the enforcement of the Act will be to deny to litigants a speedy trial before we can say that the legislature exceeded its powers.   Certainly, the extreme limits of legislative authority were reached in enacting this measure; but we cannot say that it appears conclusively that the operations of the law will result in a denial of justice.

After a consideration of the various objections urged against these measures, we are not prepared to say that their unconstitutionality is established beyond a reasonable doubt; and this is the criterion now recognized in this jurisdiction by which the invalidity of a solemn legislative declaration is to be determined.   (*In re O'Brien,* 29 Mont. 530, 75 Pac. 196, and cases cited.)   It is ordered that the peremptory writ issue as prayed for.

*Writ granted.*