Taft, J.,
dissenting. In my opinion, when an affidavit of prejudice with respect to a common pleas judge such as the affidavit involved in the instant case is filed with the clerk of a Common Pleas Court as it was in the instant ease, the clerk has a mandatory duty to “enter the fact of such filing on the trial docket in such cause and forthwith notify the Chief Justice of the Supreme Court,” who “shall designate and assign some other judge to take the place of the judge against whom such affidavit is filed.” Of course, the Chief Justice is authorized to determine whether the affidavit sets forth the required *472 “fact.” However, if it does, he has a mandatory duty, without any further hearing, to designate and assign some judge to take the place of the judge to whom the affidavit relates. I base these conclusions upon the clear and unambiguous words of Section 2701.03, Revised Code (former Section 1687, General Code), which read so far as pertinent:
“* * * on the filing of an affidavit * * * setting forth the fact of such interest, bias, prejudice, or disqualification, the clerk * * * shall enter the fact of such filing on the trial docket * * * and forthwith notify the Chief Justice * * *. The Chief Justice shall designate and assign some other judge to take the place of the judge against whom such affidavit is filed. ’ ’
Any doubt as to the meaning of the language of this statutory section should be dispelled by a comparison of' its words with those of the corresponding Section 2501.13, Revised Code (formerly Section 1527, General Code), relating to disqualification of a Court of Appeals judge, which latter section was enacted at the same time and even as a part of the same act. 103 Ohio Laws, 405, 413, 417. The latter statutory section, relative to disqualification of a Court of Appeals judge, specifically provides that, after the filing of the affidavit and notification of the Chief Justice, “the Chief Justice of the Supreme Court * * * shall hear and determine the fact of such disqualification and if found to be disqualified shall forthwith make an order transferring” such Court of Appeals judge. The only subsequent amendment of either of these statutes was an amendment of a part of Section 1527, General'Code (now Section 2501.13, Revised Code), not related in any way to the problem involved in the instant case. See 123 Ohio Laws, 742.
Again, when provision was subsequently made (113 Ohio Laws, 123) with respect to disqualification of “a magistrate or a judge of a court inferior to the Court of Common Pleas,” the General Assembly specifically provided that, upon the filing of an affidavit setting forth the fact of interest, relationship, bias, prejudice or disqualification, and the notification of a judge of the Common Pleas Court, such judge “shall proceed * * * to examine into said affidavit, and if he finds from all the evidence that such interest, relationship, bias, prejudice, or disqualification exists, he shall designate another” magistrate or judge.
*473 Section 2937.20, Revised Code (formerly Section 13433-19, General Code).
In support of his contention that he, as Chief Justice, was required to conduct a hearing to determine whether the common pleas judge, with respect to which the admittedly adequate affidavit of prejudice was filed in the instant case, was or was not disqualified, respondent relies upon the decisions of this court in Duncan, Judge, v. State, ex rel. Brown, 82 Ohio St., 351, 92 N. E., 481, and State, ex rel. Chute, v. Marshall, Chief Justice, 105 Ohio St., 320, 137 N. E., 870.
In the Duncan case, the syllabus reads:
‘ ‘ The affidavit setting forth the fact of disqualification of a judge, as provided in Section 550, Revised Statutes, is not conclusive proof of the disqualification, and the supervising judge is, by said section and Section 469, Revised Statutes, invested with a judicial discretion to require additional information satisfactory to him, regarding such disqualification.”
Section 550, Revised Statutes, provided that, on the filing of an affidavit “setting forth the fact of interest, bias, prejudice or disqualification, the clerk of the court shall enter the fact of the filing of such affidavit on the trial docket * * * and forthwith notify the supervising judge * * * who shall proceed in the same manner as provided in Section 469 to designate and assign some other judge * * That Section 469 provided that, when such supervising judge “receives satisfactory information that 'by reason of illness or other disability of any judge” such judge is unable to perform certain duties, the supervising judge “shall designate and assign” another judge.
In the opinion by Davis, J., it is stated:
“The affidavit is, at best, no more than prima facie evidence of the fact. The supervising judge may accept it and act upon it if he chooses to do so; but if, for any reason, he feels that further evidence of the disqualification is desirable, it is not only his privilege but his duty to require it. He is therefore invested with a judicial discretion which cannot be controlled by a writ of mandamus.”
Under the provisions of Section' 469, Revised Statutes, with respect to receiving “satisfactory information,” it is apparent *474 that the decision rendered was the only one which could have been properly made.
It is then stated further in that opinion that, “if the affidavit be taken as final and conclusive, it would raise a more serious question as to whether the Legislature has overstepped constitutional limits.” Apparently this statement was made because there was no specific provision in the Ohio Constitution prior to 1912 as to the power of the General Assembly with respect to disqualification of judges. Such provision as to the power of the General Assembly was supplied by the 1912 amendment of Section 3 of Article IV of the Ohio Constitution, which reads so far as pertinent:
“* * * and until the General Assembly shall make adequate provision therefor, the Chief Justice of the Supreme Court of the state shall pass upon the disqualification or disability of any judge of the Court of Common Pleas, and he may assign any judge to any county to hold court therein.” (Emphasis added.)
In 1913, shortly after this constitutional provision became effective, the General Assembly enacted Section 1687, General Code (now Section 2701.03, Revised Code). In enacting that statutory section, it apparently intended to make an ‘ ‘ adequate provision” for passing upon “the disqualification or disability” of a common pleas judge. Certainly, there could have been no other purpose for its enactment.
Subsequently, in 1922, this court, by a four to two vote, rendered its decision in State, ex rel. Chute, v. Marshall, Chief Justice, supra.
It may be inferred from a reading of the opinion “by the court” in that case that the four members who concurred therein had some doubt as to whether, if the words of Section 1687, General Code, were given their ordinary meaning, the General Assembly had made the “adequate provision” for passing “upon the disqualification or disability of ” a judge of the Court of Common Pleas which it had been authorized to make. However, it was apparently recognized that, in view of the provisions of Section 2 of Article IV of the Ohio Constitution, it would require the concurrence of six judges to declare Section 1687 unconstitutional; and this is probably the reason why the opinion *475 is based entirely upon a construction of Section 1687, General Code, which disregards the ordinary meaning of the unambiguous words used in that statute.
Thus, in the opinion by the court, it is frankly stated:
“Although Section 1687, General Code, does provide that, on the filing of an affidavit of any party, or of the counsel of any party, setting forth the fact of interest, bias or prejudice of a judge of the Common Pleas Court, the clerk shall notify the Chief Justice of the Supreme Court, who shall designate and assign some other judge to take his place, yet Section 2253-1, General Code, passed by the Legislature in 1917, is in pari materia with Section 1687, General Code, and must be read and construed therewith. That section provides as follows: ‘The Chief Justice of the Supreme Court shall receive his actual and necessary expenses incurred while performing his duties under the law and the Constitution in determining the disqualification or disability of any judge of. the Court of Common Pleas or of the Court of Appeals, to be paid from the state treasury upon the warrant of the Auditor of State, issued to such Chief Justice. ’
“ * * * It can be found that provision for such hearing and determination has been made by law only by construing these sections together. * * *”
The reasons thus advanced for rewriting the .unambiguous words of Section 1687, General Code, are unsound for several reasons.
In the first place, there was no occasion to construe Section 1687, General Code, as in pari materia with Section 2253-1, General Code. It is elementary that rules of construction, such as the rule of in pari materia, are resorted to for the purpose of resolving or removing ambiguities, — not for the purpose of giving to words, which have a clear and definite meaning, a different meaning from that clearly and definitely expressed by the lawmakers.
In the second place, Section 2253-1, General Code, was not enacted until 1917, four years after the enactment of Section 1687, General Code. Certainly, during those four years, Section 1687, General Code, could not be construed as in pari materia with a nonexistent statute. By no stretch of imagination can it *476 be said that the General Assembly, which enacted Section 1687, General Code, in 1913, intended the clear and unambiguous words which it then used to have a meaning different from that which they then clearly and definitely expressed merely because another General Assembly four years later might enact Section 2253-1, General Code. The question then is whether, by the enactment of Section 2253-1, General Code, the General Assembly which enacted that section in 1917 intended by that enactment to amend Section 1687, General Code. No such intention is expressed. To give effect to such an intention would be to imply an amendment of one statute from the enactment of another. It is elementary that repeals by implication are not favored. The same reasons for not favoring such repeals should operate to militate against favoring amendments by implication.
Also, there are no words in Section 2253-1, General Code, which support the conclusion that the General Assembly which enacted it in 1917 must have contemplated that the Chief Justice might, under Section 1687, General Code, conduct a hearing to determine the disqualification of a common pleas judge. It is obvious that, in performing his duties under Section 1687, General Code, even if that section is construed so as not to authorize a hearing to determine the disqualification of a common pleas judge, the Chief Justice might incur actual and necessary expenses. Just as one example, he might necessarily incur an expense in communicating by telephone with the clerk of a Common Pleas Court with respect to the form of the affidavit filed. In order to determine whether a common pleas judge was disqualified because of the filing of an affidavit, it would of course be necessary for the Chief Justice to know what was stated in such affidavit. It is apparent therefore that the provisions in Section 2253-1, General Code, for “actual and necessary expenses incurred while performing his duties under the law and the Constitution in determining the disqualification or disability of any judge of the Court of Common Pleas, ’ ’ are not inconsistent with a construction of Section 1687, General Code, which would not either authorize or permit him to conduct a hearing. Nothing is said in either Section 1687 or 2253-1, General Code, about conducting a hearing.
It may be observed that nothing is said in the opinion “by *477 the court” in the Chute ease about Section 1527, General Code (now Section 2501.13, Revised Code, relating to disqualification of a Court of Appeals judge), which was enacted at the same time as Section 1687, General Code, and even as a part of the same act.
The Chute case is not mentioned in State, ex rel. Turner, v. Marshall, Chief Justice, 123 Ohio St., 586, 176 N. E., 454, where a writ of mandamus was issued compelling the Chief Justice to assign another judge in place of a common pleas judge with respect to whom an affidavit of prejudice had been filed. A reading of the report of the latter case indicates also that, in reaching its decision, this court considered only the affidavit of prejudice and counteraffidavits filed by the parties.
In State, ex rel. Grogan, v. Wanamaker, Judge, 139 Ohio St., 293, 39 N. E. (2d), 853, paragraph one of the syllabus reads:
“Under Section 12000, General Code, upon timely application of a party and his or her affidavit that a fair and impartial hearing and determination cannot be had before the court in which the petition for divorce or alimony is filed, a change of venue shall be allowed and the cause removed to some county in the same judicial district. No hearing on. the basis or grounds of such party’s belief or reason for such application or affidavit is authorised. The statute is mandatory.” (Emphasis added.)
The statute there involved (former Section 12000, General Code) read:
“Upon application of a party and his or her affidavit that a fair and impartial hearing and determination can not be had before the court in which a petition for divorce or alimony is filed, a change of venue shall be allowed, and the cause removed to some county in the same judicial district for hearing and determination. ’ ’
The opinion (page 299) attempts to distinguish State, ex rel. Chute, v. Marshall, Chief Justice, supra (105 Ohio St., 320), merely by stating that “Section 12000 * * * is purely a venue statute,” and that the Chute case “which was based upon Sections 1687 and 22453-1, General Code” was “concerned with the disqualification of a judge and not with the question of venue.”
*478 The report of the Grogan case (page 295) discloses that the relator “testified that he was of the opinion that he conld not get a fair trial before two of the six judges of the Court of Common Pleas of Summit County and that he had no information that caused him to believe that he could not get a fair trial before any of the other four judges of the court.” It is apparent therefore that the decision in the Grogan case enabled the relator therein, in effect, to disqualify not merely one but six Common Pleas Court judges by the mere filing of an affidavit. To be sure, the statute stated that, on filing such an affidavit, only “a change of venue shall be allowed.” It is obvious however that such change of venue would necessarily include all of what Section 1687, General Code, referred to as the designation and assignment of some other judge to take the place of the six Summit County judges. It would appear therefore that the Chute case could not really be distinguished in, and this court should have recognized that it was in effect being overruled by, the decision of the Grogan case. Actually, the Grogan case gave the relator therein everything and a great deal more relief than the relator in the Chute case had even asked for or than the relief requested by relator in the instant case, although the statutory language involved in the Grogan case was no more mandatory in its character than the clear and unambiguous words of the statute relied upon by the relators in the Chute case and by the relator in the instant case.
Most of the contentions, as to why the mere filing of an affidavit of prejudice should not require the judge involved to withdraw from the case, are rejected by the reasons stated in the opinion of the Supreme Court of the United States in Berger v. United States, 255 U. S., 22, 65 L. Ed., 481, 41 S. Ct., 230. Thus, it is stated therein:
“The cases * * * militate against the contention of the government and they have confirmation in the words of the section. Their declaration is that ‘whenever a party to any action or proceeding, civil or criminal, shall make and file an affidavit lhat the judge before whom the action or proceeding is to be fried or heard has a personal bias or prejudice either against him or in favor of any opposite party to the suit, such judge shall proceed no further therein, but another judge shall be *479 designated * * * to hear such matter.’ There is no ambiguity in the declaration, and seemingly nothing upon which construction can be exerted — nothing to qualify or temper its words or effect. It is clear in its permission and direction. It permits an affidavit of personal bias or prejudice to be filed and upon its filing, if it be accompanied by certificate of counsel, directs an immediate cessation of action by the judge whose bias or prejudice is averred, and in his stead, the designation of another judge. * * *
if# # #
“* * * an affidavit upon information and belief satisfies the section and * * * upon its filing, if it show the objectionable inclination or disposition of the judge, which we have said is an essential condition, it is his duty to ‘proceed no further’ in the case. And in this there is no serious detriment to the administration of justice nor inconvenience worthy of mention, for of what concern is it to a judge to preside in a particular case; of what concern to other parties to have him so preside? And any serious delay of trial is avoided by the requirement that the affidavit must be filed not less than ten days before the commencement of the term.
“Our interpretation of Section 21 has therefore no deterring consequences, and we cannot relieve from its imperative conditions upon a dread or prophecy that they may be abusively used. They can only be so used by making false affidavit; and a charge of, and the penalties of, perjury restrain from that— perjury in him who makes the affidavit, connivance therein of counsel thereby subjecting him to disbarment. And upon what inducement and for what achievement? No other than trying the case by one judge rather than another, neither party nor counsel having voice or influence in the designation of that other
See also U’Ren v. Bagley, Judge, 118 Ore., 77, 245 P., 1074, 46 A. L. R., 1173; Bachmann v. City of Milwaukee, 47 Wis., 435, 2 N. W., 543; State, ex rel. Anaconda Copper Mining Co., v. Clancy, Judge, 30 Mont., 529, 77 P., 312.
Stewart, J., concurs in the foregoing dissenting opinion.