THE STATE OF MONTANA, EX REL., WALTER PEERY AND MABEL PEERY, HUSBAND AND WIFE, RELATORS, v. THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT, ET AL., RESPONDENTS.

No. 10853.
Submitted October 13, 1964. Decided April 6, 1965.
400 P.2d 648.

Joseph M. Goldman (argued), Missoula, for relators.

Hon. E. Gardner Brownlee (argued), Missoula, Wellington D. Rankin (argued), Helena, for respondents.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an original proceeding seeking a writ of mandamus, or other appropriate writ. Relators alleged in their petition that they were plaintiffs in an action pending in the district court of the fourth judicial district, in and for the County of Ravalli, wherein they sought to quiet title to certain real estate. That on June 24, 1964, one of the relators filed an affidavit of disqualification against the Honorable Emmet Glore, one of the judges of the fourth judicial district, and concurrently filed an affidavit of disqualification against the Honorable E. Gardner Brownlee, another of the judges of that judicial district. That the Honorable E. Gardner Brownlee as presiding judge, stating in his order that he was acting for himself and Judge Glore, filed an order quashing the affidavits of disqualification on August 18, 1964. That it was the duty of the respondent judges to honor the affidavits of disqualification and call in another judge from another judicial district in accordance with section 93-901, R.C.M. 1947, and that Judge E. Gardner Brown-

lee was without jurisdiction to make and enter the order. That there is no appeal from said order and no adequate remedy except by an original proceeding. Relators prayed for the issuance of an alternative writ of mandate, or other appropriate writ. Relator further seeks damages by way of costs and attorney's fees.

This court heard counsel for the relators in an ex parte presentation, and, on September 17, 1964, issued an alternative order to show cause, returnable on September 24, 1964.

Judge Glore appeared by answer and return which admitted the pertinent parts of relators' petition except he denied the allegation that Judge E. Gardner Brownlee acted for him and alleged that he had not been advised of the making and entering of the order; that following notice of issuance by this court of the alternative order to show cause, he then being in Ravalli county and vested with jurisdiction, made and entered an order calling in the Honorable Eugene B. Foot, a judge of the eleventh judicial district, to assume jurisdiction. However, on September 21, 1964, Judge Foot signed an order refusing and declining to accept jurisdiction. Judge Glore also alleged that he was never requested to call in another judge to preside in the cause prior to the institution of these proceedings. Finally, he challenges the petition on the ground it fails to state facts sufficient to entitle relators to any relief.

Judge E. Gardner Brownlee appeared by answer, alleging that he believes he was vested with original jurisdiction when the affidavits of disqualification were filed on June 24, 1964, and therefore the judge who must take action with respect thereto; that he believes subsection 4 of section 93-901, R.C.M. 1947, as amended, to be unconstitutional; that a remedy is available to relators under subsection 4 of section 93-2906, R.C.M.1947, providing that when a district judge refuses to call in another district judge after disqualification a motion for change of venue may be made.

Upon the return day the matter was argued and additional

time granted to permit submission of additional authorities which have now been made available to the court.

Insofar as the respondent Judge Glore is concerned it appears that he did attempt to comply with the order to show cause, holding the belief that he was the judge vested with jurisdiction. His efforts were not successful and since Judge E. Gardner Brownlee believed he was vested with original jurisdiction when the affidavits of disqualification were filed, Judge Emmet Glore desisted from any further action in the matter.

In view of this situation this proceeding should be and is dismissed as to Judge Glore. Hereinafter the use of the term "respondent" refers solely to Judge E. Gardner Brownlee.

Respondent, Judge E. Gardner Brownlee, contends that subsection 4 of section 93-901, R.C.M.1947, is in direct violation of Article IV, § 1, of our Constitution, respecting distribution of powers, and Article VIII relative to jurisdiction of the courts.

It might be well at this point to consider the history of subsection 4 of section 93-901.

Prior to 1903, section 180 of the 1895 Code of Civil Procedure provided:

"Sec. 180. No justice, judge, or justice of the peace, must sit or act as such in any action or proceeding:

"1. To which he is a party or in which he is interested.

"2. When he is related to either party by consanguinity, or affinity within the sixth degree, computed according to the rules of law.

"3. When he has been attorney or counsel for either party in the action or proceeding, or when he rendered or made the judgment, order or decision appealed from.

"But the provisions of this Section shall not apply to the arrangement of the calendar, or the regulation of the order of business, nor to the power of transferring the action or proceeding to some other court."

Insofar as subsections 1, 2 and 3 are concerned they remain substantially the same to this day.

A special session of the Legislature was called in December of 1903, and by Chapter 3 of that session, section 180 of the 1895 Code was amended by adding thereto subsection 4, which read:

"4. When either party makes and files an affidavit as hereinafter provided, that he has reason to believe, and does believe, he cannot have a fair and impartial hearing or trial before a District Judge by reason of the bias or prejudice of such judge. Such affidavit may be made by any party to an action, motion or proceeding, personally. or by his attorney or agent, and shall be filed with the Clerk of the District Court in which the same may be pending at any time before the day appointed or fixed for the hearing or trial of any such action, motion or proceeding. Upon the filing of the affidavit the judge as to whom said disqualification is averred, shall be without authority to act further in the action, motion or proceeding, but the provisions of this section do not apply to the arrangement of the calendar, the regulation of the order of business, the power of transferring the action or proceeding to some other court, nor to the power of calling in another district judge to sit and act in such action or proceeding. No more than five judges can be disqualified for bias or prejudice, in said action or proceeding, at the instance of the plaintiff, and no more than five at the instance of the defendant in said action or proceeding, and this limitation shall apply however many parties or persons in interest may be plaintiffs or defendants in such action or proceeding."

Hereafter, we will deal only with subsection 4 and as it was carried into the 1907 Code as part of section 6315.

In the 1909 Session of the Legislature it was amended by changing the number of judges who could be disqualified from five to two, and with this addition:

"If there be more than one judge in any judicial district in

which said affidavit is made and filed, upon the first disqualification of a judge in the cause, another judge, residing in the judicial district wherein the affidavit is made and filed, must be called in to preside in such action, motion, or proceeding; and upon the second or any subsequent disqualification of a judge in the cause, a district judge of another judicial district of the state must be called in to preside in such action, motion, or proceeding, or the action, motion, or proceeding transferred to a district judge of another judicial district of the state."

The subsection was carried into the 1921 Code as part of section 8868.

In the 1927 Session, Chapter 93 amended it with respect to the time of filing the affidavit to provide at least five days before the day appointed or fixed for the hearing or trial, and made provision for notice to counsel of the action taken by the court.

The subsection then became a part of section 93-901, R.C.M. 1947.

By Chapter 218 of the 1961 Session Laws it was further amended to provide that in a judicial district having only one judge, the affidavit with reference to any jury case must be filed at least one day before the day of setting the trial calendar if notice of such setting date had been given by the clerk at least fifteen days prior thereto.

By Chapter 82 of the 1963 Session Laws it was further amended to provide that the affidavit in all other cases must be filed fifteen days before the day appointed or fixed for a hearing or trial.

Before proceeding to a discussion of the constitutional attack made upon section 93-901, we recognize respondent's assertion that since the statute has been many times amended, as we have heretofore indicated, statements with respect to its constitutionality made in earlier opinions of this court should not be accepted as establishing constitutionality of the statute

as presently worded, and for that reason the doctrine of *stare decisis* should not apply.

However, as we have heretofore noted, the changes made by amendments through the years· have in no way altered or changed the intent and purpose of Chapter 3 of the Session Laws of the Extraordinary Session of 1903. The number of judges who may be disqualified, provision for calling in another judge of the same judicial district, and the time of filing have been altered, but none of these amendments sought to defeat the original purpose of the disqualification law.

The reasons underlying enactment of the law were set forth in In re Woodside-Florence Irr. Dist., 121 Mont. 346, 194 P.2d 241, from which case we quote:

"Section 180 of the Code of Civil Procedure of 1895 [now R.C.M.1947, § 93-901] provided for the disqualification of judges in the cases enumerated in subdivisions 1, 2 and 3 of section 8868, Revised Codes 1935 [now R.C.M.1947, § 93-901]. Those subdivisions were found to be inadequate to insure a fair trial before an impartial judge in many cases and on November 10, 1903, the governor of Montana, upon public demand therefor expressed in petitions from all parts of the state, issued a special proclamation convening the legislative assembly in extraordinary session for the express purpose of considering general legislation by which bias and prejudice of a district judge should effect the disqualification of such judge and prevent his sitting or acting as a judge in any action or proceeding in which such disqualification was properly and timely urged. Pursuant to such call of the governor the legislature convened in extraordinary session and amended section 180, supra, by adding thereto subdivision 4, being the Fair Trial Law. See Chapter 3 of the Second Extraordinary Session of 1903."

With particular reference to the changes made as to the time of filing, these were recommended to the Legislature by a conference of the judges of Montana, called by the Chief Justice

in accordance with section 93-305, R.C.M.1947, and they were adopted by the Legislature in accordance with the conference recommendations.

Respondent places much reliance upon the opinion of In re Weston, 28 Mont. 207, 72 P. 512. That case involved Chapter 42, Session Laws of 1903, which was an attempt to provide a means of disqualifying a district judge, and in brief provided two means. The first being that when a party had reason or cause to believe he could not obtain a fair and impartial trial by reason of the bias and prejudice arising from any cause of the district judge presiding, he could first request the judge to sign a petition addressed to and asking the Supreme Court to designate and appoint a judge of some other judicial district to hear the cause; if the judge failed to sign the petition within three days, then the party could petition the Supreme Court, setting forth the bias or prejudice or other ground of disqualification and the failure of the judge to sign the petition, and the Supreme Court, or any two justices thereof, might hear the petition summarily in court or chambers and appoint a judge from any judicial district in the state, other than that in which the action was pending, to preside in the cause.

The Weston case was an original proceeding seeking the appointment of a district judge to temporarily hold court in an election contest. Upon the filing of the petition, this court issued an order to show cause directed to the district judge before whom the election contest was pending. Motion to dismiss the proceeding was made on the return day upon the ground that the law was unconstitutional and the court had no jurisdiction to entertain the petition or grant the relief prayed for.

The court determined that the matter was not within its appellate jurisdiction; that none of the original writs which it was empowered to issue by the constitution should be employed, and turning to its supervisory control jurisdiction under section 2, Article VIII of the Constitution it further de-

termined that since supervisory control implied something to supervise, as well as something to control, and the exercise of judicial discretion or judgment on the part of the court, and since the Act in question did not provide for one, nor permit the other, no authority to entertain the petition or grant the relief was apparent.

The court did state that the Act violated and contravened Section 12 of Article VIII of the Constitution providing that "[a]ny judge of the district court may hold court for any other district judge * * *."

In concluding its opinion, the court held that the power sought to be conferred upon the Supreme Court or two of its justices was not judicial in character, but purely ministerial or executive, and invaded another department of the state government. It quoted Section 1, Article IV of the Constitution, and observed that the Supreme Court was placed by the Constitution at the head of the judicial system of the state; that the legislature cannot interfere with its existence or supremacy nor can they alter the nature of its jurisdiction or duties.

The opinion in the Weston case, supra, was written by Mr. Justice Holloway, who, in the following year, wrote the court's opinion in State ex rel. Anaconda Copper Mining Co. v. Clancy, 30 Mont. 529, 77 P. 312, which opinion held Chapter 3 of the Session Laws of the Extraordinary Session of 1903 to be constitutional, and with which opinion respondent disagrees.

In the Clancy case, Mr. Justice Holloway dealt specifically with sections 11, 12, 16 and 26 of Article VIII, together with sections 6 and 27 of Article III of the Montana Constitution, and with section 1 of the Fourteenth Amendment to the Constitution of the United States, and the holding of the court was that the Act was constitutional. No mention was made in the opinion of section 1 of Article IV of the Montana Constitution; that it was not overlooked by the court cannot be doubted, since its decision the previous year holding the previous attempt to permit disqualification of judges was held to be un-

constitutional and it was one of the two grounds for the court's opinion.

As to section 1 of Article IV it appears to us that in giving it consideration we must bear in mind it is the three departments of the government that are referred to, in our instance, that of the judiciary. There is no provision in the law here in question that delegates any exercise of judicial power to any other department. In the Weston case, supra, the court observed that the law there in question was an attempt by the legislative branch to alter the nature of the jurisdiction or duties of the judiciary and by reason thereof was unconstitutional.

. The Clancy case has been cited innumerable times by courts in sister jurisdictions and is a landmark case in this field.

That the right of disqualification might be conferred by statute was expressed by this court many years ago in State ex rel. Carroll v. District Court, 50 Mont. 506, 508, 148 P. 312, 313, wherein the court stated:

"That a right may be conferred by statute, that, when so conferred, it is entitled to judicial recognition; that such recognition cannot be withheld, nor the right abridged because it is subject to abuse; and that subdivision 4 of section 6315, Revised Codes [of 1907, now R.C.M.1947, § 93-901], as amended, is such a statute, and confers such a right, are propositions too well settled for discussion. State ex rel. Working et al. v. District Court, 50 Mont. 435, 147 Pac. 614; State ex rel. First Trust & Sav. Bank v. District Court, 50 Mont. 259, 146 Pac. 539; Washoe Copper Co. v. Hickey, 46 Mont. 363, 128 Pac. 584; State ex rel. Carleton v. District Court, 33 Mont. 138, 82 Pac. 789, 8 Ann.Cas. 752."

. In State ex rel. Cline v. District Court, 142 Mont. 278, 384 P.2d 490, a cause in which respondent here was the respondent there, we quoted the same paragraph from the Carroll case, supra, and further stated:

"Respondent court contends that the disqualification statute is unconstitutional, that its use is being abused, and that the

Bellon opinion [State ex rel. Bellon v. District Court, 140 Mont. 447, 373 P.2d 314] is too broad and should be modified.

"Turning to the statute, section 93-901, R.C.M.1947, respondent points out that the portion thereof in question here was originally adopted at a special session of the Legislature convened on December 1, 1903, and the purpose of the amendment at that time was to secure prompt trial of cases within the judicial district where they were pending or to have them transferred to another judicial district. Immediately following adoption of this measure, and a companion measure providing for change of venue, they were challenged upon constitutional grounds in an original proceeding seeking a writ of prohibition in this court in State ex rel. Anaconda Copper Mining Co. v. Clancy, 30 Mont. 529, 77 P. 312, and there the Acts were held to be constitutional. While respondent in the instant proceeding refers to the language used in the opinion of the court on that occasion as demonstrating the court's feeling that the extreme limits of legislative authority were reached in enacting the measure, it must be remembered that the Act then provided that five district judges might be disqualified by each side, which could if all were used lead to disqualification of two-thirds of all the district judges then existing in the state, and it was comparing the fact that the Act stood out in striking contrast with similar statutes of ten states which limited the disqualification to but one judge which brought from the court this statement in its opinion. This extreme liberality was restricted at the 11th Session of the Legislature in 1909 when the Act was amended to provide no more than two judges could be disqualified at the instance of the plaintiff and no more than two at the instance of the defendant in any action or proceeding, as the law remains to this day. It is still the view of this court that the Act is constitutional."

We should at this point quote what is said in the opinion in State ex rel. Bennett v. Bonner, Governor, 123 Mont. 414, 214

P.2d 747, with respect to the relations of the legislative and judicial departments of our government.

"Judicial power as contra-distinguished from the power of the law has no existence. Judicial power is exercised by means of courts which are the mere creations and instruments of *the law,* and independent of *the law* the courts have no existence. *The law* precedes the courts. *The law* governs the courts. Thus it is the function of the courts to expound and administer *law* in those causes properly brought before them in course of legal procedure.

"Judicial power is never exercised for the purpose of giving effect to the will of the judge. It is always exercised for the purpose of giving effect to the will of the people as that will is expressed in *the law.*

" 'Law is a solemn expression of the will of the supreme power of the state.' R.C.M.1947, § 12-101. 'The will of the supreme power is expressed: 1. By the constitution; 2. By statutes.' R.C.M.1947, § 12-102. 'The organic law is the constitution of government, and is altogether written. Other written laws are denominated statutes. The written law of this state is therefore contained in its constitution and statutes, and in the constitution and statutes of the United States.' R.C.M.1947, § 93-1001-9.

"Thus the jurisdiction of a court means the power or authority which is conferred upon a court by the law including the organic law written in the constitution, to entertain, hear and determine controversies or causes between parties and to carry its judgments and orders into effect. By jurisdiction over the subject matter is meant the nature of the cause of action, and the relief sought and this is conferred by the sovereign authority which organizes the court, and is to be sought for in the general nature of its powers, or in authority specially conferred.

"A judicial tribunal established by the constitution owes its

existence to that instrument alone and is in no way dependent upon an act of the legislative assembly.

"The source of the jurisdiction of the supreme court of this state is found in sections 1, 2 and 3 of Article VIII of the Constitution of Montana. See Bordeaux v. Bordeaux, 26 Mont. 533, 535, 69 P. 103.

"The source of the jurisdiction of the district courts of this state is found in sections 1, 11, 12, 13 and 17 of Article VIII of the Constitution of Montana.

"In this state a district judge may be disqualified for imputed bias or prejudice by the timely filing of a proper disqualifying affidavit as provided in R.C.M.1947, § 93-901." The court then quoted a portion of section 93-901, and other pertinent statutes and then continued:

"The above statutes recognize the authority conferred as well as the duty imposed by the constitution upon the district judge to 'fix the term of court,' Art. VIII, sec. 17, to perform the duties incident thereto, being arranging, calling and setting the calendar of actions and proceedings pending in his court, regulating the order of business therein and, in proper cases, transferring the action or proceeding to some other court and calling in another district judge to sit and act in actions or proceedings wherein he has been disqualified. Such statutes are in harmony with the provisions of the constitution, above quoted, conferring power upon the district courts and the judges thereof."

Respondent cites us to decisions in sister states, California and Oregon among others, and we desire to comment particularly upon the situations which brought about their opinions.

So far as the Oregon court is concerned, in 1926, in U'Ren v. Bagley, 118 Or. 77, 245 P. 1074, 46 A.L.R. 1173, being an original proceeding in mandamus to compel a judge to grant a change of venue or call in another judge to preside in a pending suit. The Oregon law provided that any party or attorney could establish prejudice by motion supported by affidavit

that the judge before whom the suit was pending was prejudiced against such party or attorney so that the party or attorney cannot, or believes he cannot, have a fair and impartial trial before such judge, and that it was made in good faith and not for the purpose of delay. This proceeding raised for the first time in that jurisdiction the constitutionality of their statute. Much that is said in the opinion since our constitutional provisions are similar to theirs, and our law is likewise much similar, is appropriate to be repeated here, and we quote:

"Did the Legislature go beyond its constitutional powers in enacting this law and thereby invade the province of a co-ordinate branch of the government? Under our constitutional system of government, the legislative, executive, and judicial branches are required to function exclusively within their respective spheres. The success which our form of government has achieved in the past may be attributed largely to the fact that each co-ordinate branch has recognized the fundamental and salutary principle that there must be no encroachment upon the other. It remains, however, for the judiciary to say when there has been a transgression in this respect. This authority vested in the courts is one which should be exercised with extreme caution and only when there has been a plain and palpable abridgment of the powers of one department by another. To determine with precision the boundary between the respective co-ordinate branches of our government has ever been a difficult thing for the courts to do. The question at bar is in the twilight zone. Hence we must proceed with circumspection when called upon to say that there has been a legislative abridgment of judicial power. Courts are ever reluctant to annul by judicial sentence what has been enacted by the lawmaking power. In fact, when the life of a statute is at stake, it is entitled to the benefit of every reasonable doubt. Cooley's Constitutional Limitations (7th Ed.) 252; State v. Laundy, 103 Or. 443, 204 P. 958, 206 P. 290; Smith et al. v.

Cameron et al., 106 Or. 1, 210 P. 716, 27 A.L.R. 510; State v. Jacobson, 80 Or. 648, 157 P. 1108, L.R.A.1916E, 1180.

"We take as a premise the truism that every citizen is entitled to a fair and impartial trial. To secure that sacred and constitutional right, legislation undoubtedly may be enacted. Does it not follow that court procedure may be regulated to the end that justice will be administered? May not the state through its legislative branch of government declare the policy of the law to be that courts shall be free from any question of bias or prejudice? The Legislature in effect has said that it is better, as a matter of public policy and the due administration of justice, that a judge, when challenged for bias or prejudice, should not act in that particular cause, even though he be blessed with all of the virtues any judge ever possessed. Courts, like Caesar's wife, must be not only virtuous but above suspicion. In Oakley v. Aspinwall, 3 N.Y. 547, it was well said: 'It is the design of the law to maintain the purity and impartiality of the courts, and to insure for their decisions the respect and confidence of the community. Their judgments become precedents which control the determination of subsequent cases; and it is important, in that respect, that their decisions should be free from all bias. After securing wisdom and impartiality in their judgments, it is of great importance that the courts should be free from reproach or the suspicion of unfairness. The party may be interested only that his particular suit should be justly determined; but the state, the community, is concerned not only for that, but that the judiciary shall enjoy an elevated rank in the estimation of mankind.'

"The law is not so much concerned with the respective rights of judge, litigant, or attorney in any particular cause, as it is, as a matter of public policy, that the courts shall maintain the confidence of the people. 15 R.C.L. 530. As stated in People [ex rel. Roe] v. Suffolk Common Pleas, 18 Wend. (N.Y.) 550: 'Next in importance to the duty of rendering a righteous judg-

ment is that of doing it in such a manner as will beget no suspicion of the fairness and integrity of the judge.'

"No judge has a vested right to sit in a particular case. Neither has a litigant nor an attorney a vested right to have his case heard by any particular judge. In the consideration of this statute a more important question is involved, viz. the purity, stability, and integrity of courts. * * *

"We agree that a fair-minded judge cannot be transformed into a biased or prejudiced one merely by legislative fiat. However, the statute does not purport so to do. No question of fact is involved. It is analogous to a peremptory challenge to a juror for which no reason need be assigned. Such challenge does not establish actual prejudice, but the law says that under such circumstances the juror must step aside. So it is with judges.

"It is to be borne in mind that this law does not oust courts of their jurisdiction, but simply requires that another judge be called to preside in the same court. There is a well-marked distinction between a judge and a court. Some courts say that the operation of this law is analogous to a change of venue. Bachmann v. City of Milwaukee [47 Wis. 435, 2 N.W. 543], supra; State ex rel. Anaconda Copper Mining Co. v. Clancy, 30 Mont. 529, 77 P. 312."

The court sustained the constitutionality of the statute. It affirmed this ruling later in State Capitol Reconstruction Commission v. McMahan, 160 Or. 83, 83 P.2d 482.

In 1947, the Oregon Legislature amended their law, and provided that any party or attorney in any judicial proceeding might file an application in writing requesting a change of judge at any time prior to final determination of the matter in uncontested cases and within specified times in contested cases. Under the wording of the statute, no showing of bias or prejudice was required in order to disqualify a judge.

In 1955, in State ex rel. Bushman v. Vandenberg, 203 Or. 326, 276 P.2d 432, 280 P.2d 344, an original proceeding in manda-

mus brought in the Supreme Court of Oregon against a judge to compel him to proceed with determination of a criminal prosecution the court held that the law was unconstitutional because it contravened the principle of separation of powers. The court in its opinion stated:

"In U'Ren v. Bagley [118 Or. 77, 87, 245 P. 1074, 46 A.L.R. 1173] it was said: 'To determine with precision the boundary between the respective co-ordinate branches of our government has ever been a difficult thing for the courts to do. The question at bar is in the twilight zone.' 118 Or. 81, 245 P. 1075. It was in the 'twilight zone' because the statute did not require the charge of prejudice to be supported by the statement of any facts. There can be no doubt, however, that the legislature may, without unduly encroaching on judicial power, provide by law for the disqualification of judges for bias or prejudice if the facts establishing such bias or prejudice are required to be stated.

"It will have been observed that the authorities and statutes to which we have referred all have to do with the disqualification of a judge for bias or prejudice and the power of the legislature in that regard. The statute sustained in U'Ren v. Bagley was enacted for the purpose of enabling a party to disqualify a judge in a particular case for prejudice against the party or his attorney, and the method of showing the existence of such prejudice, or, at least, of the belief that it existed, was provided to be an affidavit to that effect. The affiant was required to swear that the affidavit was ' "made in good faith and not for the purpose of delay." ' Its essential character was not altered because there was no requirement that the facts supporting the claim of prejudice were not required to be stated, nor because of the impossibility of proving that the affidavit was false or the application not made in good faith, but for unauthorized purposes, nor because the procedure was 'shamefully abused.' U'Ren v. Bagley, supra, 118 Or. at page 87, 245 P. 1074.

"But here we are not dealing with a statute prescribing the procedure for getting rid of a judge disqualified for bias or prejudice. The legislature has now invested litigants and their attorneys with the power to remove duly appointed or elected and qualified judges from the bench in particular cases at will —for good cause, bad cause, or no cause at all. It may be true that the same thing was possible under the former statute, but that was only by an *abuse* of the statute, not by using it for the purposes which it was manifestly intended to accomplish. Therein lies the distinction between the two laws and the reason why U'Ren v. Bagley does not control the decision here."

Further in its opinion, the Oregon Court stated that they had been advised of no other state, except California, which had enacted a similar statute and that such statute had been held unconstitutional by the Supreme Court of California.

The Oregon Court held that the statute contravened the principle of the separation of powers as declared in the Oregon Constitution and was unconstitutional and void.

Turning now to the situation in California. Austin v. Lambert, 11 Cal.2d 73, 77 P.2d 849, 115 A.L.R. 849, was a proceeding for a writ of mandamus to compel a judge to proceed with the hearing and determination of a pending action, and arose in 1938. The law there in question was enacted in 1937 and provided that any party or his attorney in any proceeding, except the people or district attorney in a criminal case, could make and file with the clerk of the court a peremptory challenge in writing of the presiding judge. Thereupon, without any further act or proof, the proceeding would be assigned to some other judge. It was contended the law was an unwarranted interference with the constitutional powers and duties of the judge. In the course of its opinion the court stated:

"The judicial department has recognized that reasonable regulations may be made by the legislative branch in the matter of prescribing certain disqualifications of a judge to act.

Those regulations were laid down generally in sections 170, 171, and 172 of the Code of Civil Procedure as originally enacted. They provided for disqualification for bias, prejudice, or interest and for the most part were a continuation of the civil law or the common law on the subject, and were based on the eternal verity that disinterest and impartiality are indispensable in the proper administration of justice. In this state, prior to the enactment of section 170.5 in 1937, the question of the existence of bias or prejudice on the part of the trial judge was one of fact to be alleged under oath and to be subject to judicial determination. Nothing is said in the new section about bias, prejudice, interest, or any other recognized ground for disqualification. No showing, ex parte or otherwise, is required and no reason need be given for thus stripping the judge of his judicial functions. No more is required to accomplish that result than the arbitrary and undisclosed reason and purpose of the litigant or his attorney.

"No statute has been brought to our attention or discovered by research which has gone to the length of section 170.5 in thus placing the exercise of judicial power, duty and responsibility subject to the whim and caprice of a lawyer or litigant, and no court decision has been cited or obviously could be cited upholding such an arbitrary provision. Nevertheless the petitioner and those in collaboration with him urge that in fifteen other states in the United States there are statutes providing for a so-called 'peremptory challenge' of a judge and that those enactments have not been declared unconstitutional. A reading of those statutes discloses that without exception they provide for some showing of disqualification by *affidavit*. True, in many if not in most of them the affidavit, if made as provided by the statute, is effective, and no counter showing is required or permitted. Such an ex parte proceeding has been upheld on the ground that the charge of bias or prejudice under oath is at least an imputation of such disqualification

sufficient to save the statute from successful attack on constitutional grounds." Later on the court commented:

"It is not contended by the respondent or by those appearing in his behalf that disqualification for other causes, such as interest or relationship is not amply provided for apart from section 170.5. But it is earnestly contended that good reasons are often present which should prevent a judge from trying a particular case but that they are either not the proper subject of averment and proof or are not susceptible of proof. Mental incompetence, irascibility, arbitrariness, discourtesy to counsel, litigants, and witnesses, and other temperamental obliquity, are suggested as good cause for removing a judge from the trial of a cause, but are said to be well nigh impossible of proof sufficient to legally disqualify and that therefore the peremptory challenge is the only way of meeting the situation. It is regrettable that such causes seemed sufficiently grave to justify this legislation. That there is occasionally just cause for complaint of judicial conduct on the grounds advanced cannot be denied. The rule in force for so long a time in this state of permitting a judge to pass upon the question of his own disqualification was admittedly unsatisfactory and unjust. The later rule of having the question of his disqualification passed upon by another judge assigned to the task by the chairman of the judicial counsel, as provided by subdivision 5 of section 170 of the Code of Civil Procedure, as amended by St.1937, p. 376, is claimed to have proved likewise unsatisfactory.

"But to put in the hands of a litigant uncontrolled power to dislodge without reason or for an undisclosed reason, an admittedly qualified judge from the trial of a case in which forsooth the only real objection to him might be that he would be fair and impartial in the trial of the case would be to characterize the statute not as a regulation but as a concealed weapon to be used to the manifest detriment of the proper conduct of the judicial department. The well-recognized limitations on legislative regulations of such matters in other jurisdictions,

both state and federal, were available when section 170.5 was enacted. In none of them is the arbitrary method of administering the remedy adopted in enacting the statute under attack approved or countenanced. It must therefore be held to be an unwarranted and unlawful interference with the constitutional and orderly processes of the courts."

As will be noted both of these rulings, Oregon and California, turn upon the same point raised in the Weston case, supra, 28 Mont. 207, 72 P. 512, but these faults were remedied in Montana in the Extraordinary Session of 1903, and did not exist at the time of the opinion in the Clancy case, 30 Mont. 529, 77 P. 312, supra.

In 1957, the California Legislature enacted a new law and a proceeding seeking a writ of mandate to require the assignment of the pending action to another judge was brought, being Johnson v. Superior Court, 50 Cal.2d 693, 329 P.2d 5. The constitutionality of the new law was the sole question before the court, and that law provided in substance, that no judge of a superior, municipal or justice court shall try any civil action or special proceeding when it is established, in the manner set forth in the section, that he is prejudiced against a party or attorney appearing in the action. It further provides that prejudice may be established by an affidavit that the judge is prejudiced against the party or attorney so that the party or attorney cannot, or believes that he cannot, have a fair and impartial trial before such judge. A party or attorney is not permitted to make more than one such challenge in any one action or special proceeding. The court stated in its opinion:

"In attacking the statute respondents argue that, because it does not require the litigant or his attorney to set forth the reasons or grounds which constitute the basis for the statement in the affidavit that the judge is prejudiced and because there is no provision for a judicial determination of whether the judge is in fact prejudiced, the statute makes an unconstitutional delegation of legislative and judicial powers to litigants

and their attorneys and is an unwarranted interference with the powers of the courts. * * *

"Section 170.6 was passed by an overwhelming vote of both houses of the Legislature and approved by the Governor in 1957. The enactment of the statute represented the culmination of many years' effort by the organized bar of this state to obtain legislation which would permit the challenge of a judge for prejudice without an adjudication of disqualification. A statute enacted in 1937, which, as we shall see, differed materially from section 170.6, was held unconstitutional in Austin v. Lambert, 11 Cal.2d 73, 77 P.2d 849, 115 A.L.R. 849. Thereafter four measures similar to section 170.6, except that two of them were applicable to criminal as well as civil cases, were passed by the Legislature but failed to receive executive approval. The history of the section thus shows that the State Bar and the Legislature have long felt that there is a need for such a measure.

"The Legislature may adopt reasonable rules and regulations regarding the disqualification of judges (Caminetti v. Pacific Mutual Life Ins. Co., 22 Cal.2d 386, 390, 139 P.2d 930), and it is obvious that prejudice upon the part of a judge may properly be made a ground for disqualification. The declaration in section 170.6 that prejudice against a party or his attorney is the basis of the disqualification constitutes a sufficient legislative designation of the standard to be applied, and, contrary to respondents' contention, it is wholly unnecessary for the Legislature to attempt to list the many conceivable factors which might cause a judge to be prejudiced. * * *

"The Legislature, in our opinion, also acted within its power to adopt reasonable regulations when it provided that, for the limited purposes of section 170.6, prejudice may be established by the filing of an affidavit sworn to by a party or his attorney, without judicial determination of the existence of the fact. It is important, of course, not only that the integrity and fairness of the judiciary be maintained, but also that the busi-

ness of the courts be conducted in such a manner as will avoid suspicion of unfairness. See Berger v. United States, 255 U.S. 22, 35-36, 41 S.Ct. 230, 65 L.Ed. 481; Haslam v. Morrison, 113 Utah 14, 190 P.2d 520, 523. Prejudice, being a state of mind, is very difficult to prove, and, when a judge asserts that he is unbiased, courts are naturally reluctant to determine that he is prejudiced. In order to insure confidence in the judiciary and avoid the suspicion which might arise from the belief of a litigant that the judge is biased in a case where it may be difficult or impossible for the litigant to persuade a court that his belief is justified, the Legislature could reasonably conclude that a party should have an opportunity to obtain the disqualification of a judge for prejudice, upon a sworn statement, without being required to establish it as a fact to the satisfaction of a judicial body. Cf. People v. Compton, 123 Cal. 403, 413, 56 P. 44.

"The possibility that the section may be abused by parties seeking to delay trial or to obtain a favorable judge was a matter to be balanced by the Legislature against the desirability of the objective of the statute. * * *

"Statutes similar to section 170.6 have been sustained in every state where they were considered by the courts, with the exception of Oklahoma."

The court then went on to distinguish the new statute from the one held unconstitutional in the Austin case, supra, and held the law to be constitutional.

State ex rel. Pratt v. Weygandt, Chief Justice, 164 Ohio St. 463, 132 N.E.2d 191, was an original proceeding in mandamus to require the Chief Justice of the Supreme Court to remove a judge from hearing and determining a cause pending before him under the Ohio disqualification statute. The court held that the record did not disclose that the Chief Justice had abused his discretion in refusing to unseat the judge. Even after this holding the court added these comments:

"However, in concluding, we think it not inappropriate to

quote the following language from the opinion in the case of Haslam v. Morrison, 113 Utah 14, 20, 190 P.2d 520, 523:

" 'The purity and integrity of the judicial process ought to be protected against any taint of suspicion to the end that the public and litigants may have the highest confidence in the integrity and fairness of the courts. This is not to say that the mere filing of an affidavit of bias and prejudice, *ipso facto* casts such suspicions on the judge, and upon his integrity and fairness, that he ought to disqualify himself. However, it is ordinarily better for a judge to disqualify himself even though he may be entirely free of bias and prejudice if either litigant files an affidavit of bias and prejudice. "Next in importance to the duty of rendering a righteous judgment is that of doing it in such a manner as will beget no suspicion of the fairness or integrity of the judge." ' "

Before concluding this portion of our opinion, we should note that the respondent contended here that the doctrine of *stare decisis* should not apply, yet it is by virtue of this very doctrine that he believes the Weston opinion, supra, is authority for declaring the disqualification law unconstitutional.

As we said in State ex rel. Kain v. Fischl, 94 Mont. 92, 20 P.2d 1057:

"The general rule is that when the highest court of a state has construed a constitutional provision, the rule of *stare decisis*—that a question once deliberately examined and decided should be considered as settled—applies, unless it is demonstrably made to appear that the construction manifestly is wrong. Decisions construing the Constitution should be followed, in the absence of cogent reasons to the contrary, as it is of the utmost importance that our organic law be of certain meaning and fixed in interpretation. 7 R.C.L. 1002; Cooley's Constitutional Limitations (8th Ed.) 123."

Then in State ex rel. Sparling v. Hitsman, 99 Mont. 521, 44 P.2d 747, this appears:

"We realize the force and the wisdom of the rule of *stare*

*decisis.* We are not unmindful of the fact that principles of law should be positively and definitely settled in order that courts, lawyers, and, above all, citizens may have some assurance that important legal principles involving their highest interests shall not be changed from day to day, with the resultant disorders that of necessity must accrue from such changes. We are mindful, however, of the fact, as stated by Mr. Justice Brandeis in a dissenting opinion in the case of Di Santo v. Com. of Pennsylvania, 273 U.S. 34, 47 S.Ct. 267, 270, 71 L.Ed. 524, that 'in the search for truth through the slow process of inclusion and exclusion, involving trial and error, it behooves us to reject, as guides, the decisions upon such questions which prove to have been mistaken.' The rule of *stare decisis* will not prevail where it is demonstrably made to appear that the construction placed upon the constitutional provision in the former decision is manifestly wrong. State ex rel. Kain v. Fischl, supra."

We have now searched for the truth on this all important legal principle, under our own previous decisions and those of sister states, and we do not believe that we have been previously mistaken. In our opinion, the statute is constitutional, being a proper subject of legislative power and it does not impinge upon the existence or supremacy of the judicial system nor alter its jurisdiction or duties; that it is a reasonable manner of providing a fair trial for all litigants and should be observed.

There exists some other matters raised by respondent by brief and upon argument that should be considered before we terminate this unduly lengthy opinion.

The first matter is that section 93-901, R.C.M.1947, should not be construed to permit disqualification of a judge pending motion for a new trial because of the provisions of Rule 59(d), M.R.Civ.P. That disqualification was permissible upon a motion for new trial was established in State ex rel. Carleton v. District Court, 33 Mont. 138, 82 P. 789, and has been consist-

ently followed since. It was before us in State ex rel. Cline v. District Court, 142 Mont. 278, 384 P.2d 490, and we reaffirmed the doctrine. In State ex rel. Wilson v. District Court, 143 Mont. 543, 393 P.2d 39, involving the disqualification statute in criminal cases, we refused to follow the interpretation given to the civil statute and declined to permit the disqualification of a judge in a criminal case following verdict and before hearing upon a motion for a new trial.

It is only fair to say that we are concerned as to the interpretation of the words "action, motion or proceeding" adopted in the Carleton case, and in our search for truth we are not satisfied that it should be followed in view of the provisions of the Montana Rules of Civil Procedure. Recent cases before us on appeal, where new trials have been granted by the court on its own initiative, necessarily being within the ten-day period provided by Rule 59(d), lead us to wonder if the doctrine should remain applicable on motions for new trial. If the court were not required to hurry in order to comply with the ten-day time limit, which of necessity precludes, or at the least limits, the time for preparation by counsel of briefs for the use of the court, and with these situations arising during busy court terms, court itself may not have any time for research or to hear counsel on argument during the ten-day period. If disqualification were not permitted upon motions for new trial, ample opportunity would be afforded to the court to consider a motion for new trial in the regular manner, receiving briefs, hearing arguments, doing research and considering the record, thus eliminating any hasty judgment which is now obligatory.

It would not be appropriate to comment further here, since this proceeding does not involve a motion for a new trial, but we wish to warn counsel now that we are extremely concerned about this interpretation being the correct one now to be followed in view of the adoption of the Rules, and we want it understood that nothing said in this opinion is to be inter-

preted as reaffirming the principle that disqualification may be exercised upon a motion for a new trial.

The second matter is the contention of respondent that mandamus is not the proper remedy here. Respondent admits that this court held otherwise in State ex rel. Coleman v. District Court, 120 Mont. 372, 378, 379, 186 P.2d 91, 94, in these words:

"Propriety of Mandamus. It is well settled by the authorities that mandamus is the proper remedy upon facts such as are presented in this proceeding. 1 Bancroft's Code Practice and Remedies, § 592, p. 880, states the law as follows: 'This [mandamus] is an appropriate remedy by which to compel a disqualified judge to perform a mandatory duty resting upon him to call in another judge or transfer the cause to another department or court.' Citing a long array of cases in support of the rule above stated. We find no merit in the contention that mandamus will not lie for the reason that relatrix has a plain, speedy and adequate remedy by resorting to the provisions of section 9098, Revised Codes 1935 [now R.C.M.1947, 93-2906], relating to change of place of trial upon disqualification of the resident judge."

Relators prayed for damages by way of their expenses and attorney's fees in seeking relief before this court. Upon argument the question was raised as to who would be liable for any such damages should relief be granted and at that time counsel for relators stated that if this court felt that such damages should be assessed against the respondent judge that relators would waive them, since they had no intention of seeking them from the judge. In our view, if damages were awarded, under the fact situation here appearing, they would have to be assessed against the respondent judge and by reason of the waiver none will be assessed.

Respondent in his brief stated:

"I believe that Montana should have some means whereby when there is reasonable grounds to believe a party may not

receive a fair trial before some particular judge, then and in that event some means should exist to obtain a different judge.

"I believe the Supreme Court should have some power to prevent the misuse of the affidavit.

"As to how this can be done, I believe in either of two ways, leave the matter to the January 1965 Session of the Legislature who may either pass a new law, or do as the Legislature did in Missouri, leave the matter to a Supreme Court Rule."

This in part accounts for the delay in handing down this opinion, since the court did wait to see what action the Legislature would take with respect to section 93-901. Senate Bill No. 95 was introduced, passed and approved by the Governor on March 8, 1965. The only change made in the statute was the elimination of the words "by reason of the bias and prejudice of such judge." The elimination of these words might bring forth the thought from statements in cases we have herein quoted from, that this would alter our holding herein. This will not be so since the affidavit will still be required to state that the party has reason to believe and does believe he cannot have a fair and impartial hearing or trial before the district judge. The California form set forth in their new law and approved in Johnson v. Superior Court, supra, provides substantially that the judge is prejudiced against the party or the interest of the party so that affiant cannot or believes that he cannot have a fair and impartial trial or hearing before such judge. We fail to see any substantial difference.

As to the suggestion that this court take over the matter of disqualification by rule, or at least control its use to prevent abuse thereof, in the present situation we do not feel it necessary. This is not to say that we do not have the power to do so, since it is entirely a procedural matter. But there are several factors that should be considered in view of the long history of this statute. It has always been called the Fair Trial Law, it was adopted at a time when it appeared to be most essential, in fact the Governor was petitioned by our citizens to call the

legislature into extraordinary session for that purpose. It has served litigants well, though admittedly it has been and can continue to be abused. Our district judges and the justices of this court are elective officers, responsible to the electorate of our state. The citizens of Montana requested disqualification be enacted by the legislature because the courts themselves had not provided this means of securing a fair trial. For these reasons at this time we decline to adopt any rules with respect thereto.

Adoption of rules of procedure can be petitioned for by the bench and bar of Montana, and it may be that they may desire to do so in this field. We have an Advisory Committee to consider all proposals for changes in rules or adoption of new ones. To them in the first instance should go any such requests.

Let a writ of mandate issue.

MR. JUSTICES JOHN C. HARRISON, DOYLE and CASTLES concur.

MR. JUSTICE ADAIR concurring in result.

I am in accord with the result announced in the foregoing opinion but do not concur in much that is said therein.