JOHN CLIFFORD HARDING, Petitioner, v. THE STATE OF MONTANA and EDWARD ELLSWORTH, JR., Warden of the State Penitentiary of the State of Montana, Respondent.

No. 11269.

Submitted January 23, 1967. Decided February 20, 1967.

424 P.2d 130.

William F. Crowley, Missoula, for petitioner.

Forrest H. Anderson, Atty. Gen., Helena, Oscar Hendrickson, County Atty., Chinook, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an original proceeding wherein petitioner seeks a writ of habeas corpus or other appropriate post-conviction remedy. Following an ex parte hearing an alternative order to show cause was issued by this Court on December 20, 1966. An answer was filed by the Attorney General's office on behalf of the respondents.

On February 13, 1962, the following events took place: (1) Petitioner, John Clifford Harding, was charged in a two-count information with the crimes of grand larceny and attempted rape, both crimes alleged to have been committed on February 6, 1962. The information also charged a prior felony conviction. (2) The county attorney made application for leave to file the information direct and the motion was granted. (3) Petitioner was arraigned and pled guilty to both counts of the information and to the charge of prior conviction. (4) The district judge sentenced petitioner to 10 years in the state prison on the charge of grand larceny, and 25 years for the crime of attempted rape, the sentences to run consecutively.

Petitioner alleges "that the proceedings against him were defective and deprived him of the rights guaranteed him by the Constitution of the United States and the Constitution of the State of Montana in the following particulars:

"1. The Petitioner was not advised of his rights to counsel as required by the Sixth and Fourteenth Amendments to the Constitution of the United States, thus depriving him of liberty without due process of law. He was never advised that if he could not afford to hire counsel he could have the benefit of a court-appointed attorney at no cost to himself.

\* \* \* \* \* \* \* \* \* \*

"6. The court did not observe the statutory requirements of section 94-7801, R.C.M.1947 requiring the court to wait two days after the verdict before pronouncing judgment. There was not an intelligent waiver of the time for pronouncing judgment. He could not waive the required time of judgment as he was not informed of his rights to such time."

The circumstances leading up to petitioner's arrest can be stated as follows:

Petitioner was 28 years old. He had only an eighth grade education and was an itinerant farm worker. For several months prior to his arrest he had been a truck driver at a ranch near Chinook, Montana.

On February 6, 1962, petitioner went with his paycheck into the town of Zurich, Montana, and proceeded to get drunk. He drank all day and far into the night. The latter part of this drinking bout he spent thoroughly intoxicated in a bar operated by a lady bartender. As it grew late, all the other patrons left and petitioner and the lady bartender were alone. Petitioner made advances to the bartender, who repulsed him. He persisted and became violent, and the lady bartender ran screaming from the place in search of help.

Alone in the bar, thoroughly drunk, petitioner emptied the money in the cash register into his pockets. He then attempted to open the bar's safe. While attempting to do this, petitioner was apprehended by local citizens who had been called by the lady bartender to aid her.

Petitioner remained in jail from the time of his arrest until his arraignment on February 13, 1962. The "transcript of proceedings had on arraignment" is a part of the record before this Court. Since the petitioner alleges that these proceedings were defective, we set them forth in full.

"The Court: State of Montana against John Clifford Harding. The Motion for Leave to file Information is granted, bail is set in the sum of $7,000.00. Stand up, Mr. Harding. Is your true name John Clifford Harding?

"Mr. Harding: Yes, sir.

"The Court: Do you have a lawyer, Mr. Harding?

"Mr. Harding: No, sir.

"The Court: Do you wish to have a lawyer before you enter your plea in this matter?

"Mr. Harding: No, sir.

150

"The Court: You understand you have a right to have a lawyer if you want one?

"Mr. Harding: Yes, sir.

"The Court: And you have had a copy of the Information which has been filed against you?

"Mr. Harding: Yes, sir.

"The Court: And you know what you are charged with?

"Mr. Harding: Yes, sir.

"The Court: Are you ready to enter your plea now or do you want further time before you enter your plea?

"Mr. Harding: I enter it now.

"The Court: You have read it over? You don't care to have me read it over to you?

"Mr. Harding: No, I have read it over.

"The Court: The County Attorney has filed an Information against you. The first count is that you are guilty of the crime of grand larceny, committed in Blaine County, Montana, on or about the 6th day of February, 1962. What is your plea to this Information, guilty, or not guilty?

"Mr. Harding: Guilty.

"The Court: He has further charged in the second count that on the 6th day of February, 1962, you committed the crime of attempted rape in Blaine County, Montana. What is your plea to this Information, guilty or not guilty?

"Mr. Harding: Guilty.

"The Court: Also in the Information I have just read, there is a charge in there that you were previously convicted of a felony on November 18, 1954 in the District Court of the State of Nebraska, charge of burglary?

"Mr. Harding: Yes.

"The Court: And was sentenced from three to seven years in the Nebraska State Prison. Do you admit that or deny it?

"Mr. Harding: I admit it.

"The Court: Are you ready to have judgment pronounced at this time?

"Mr. Harding: Yes, sir.

"The Court: Very well, it's the judgment of this Court on the first count that you be confined in the State Penitentiary at Deer Lodge for a term of ten years, and on the second count that you be confined to the State Penitentiary at Deer Lodge for a term of twenty-five years, and that the two sentences shall run consecutively. That's all."

It is evident from the "transcript of proceedings had on arraignment" that the district court (1) did not inform the petitioner of his right to have counsel appointed if petitioner could not afford to hire counsel; (2) did not inform the petitioner of the extent of the penalty provided by law for the two crimes petitioner was accused of committing; and (3) did not wait the two days required by section 94-7801, R.C.M.1947, before imposing the sentence.

In State ex rel. Biebinger v. Ellsworth, 147 Mont. 512, 415 P.2d 728, we commented as follows: "In Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70, the court said:

" '* * * The record must show, or there must be an allegation and evidence which show that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.' See also Gideon v. Wainwright, 372 U.S. 335, 83 St.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733.

"It is the duty of the district court to inform the defendant not only that he had a right to counsel, but that if he is without means to employ counsel that counsel would be provided for him by the State without cost to him. Too, it is the trial court's duty in taking a plea to inform the defendant of the extent of the penalty provided by law. The record must also show that the provisions of section 94-7801, R.C.M.1947, as to the period of time between plea and sentence have been complied with."

The record before this Court confirms at least the two contentions of the petitioner which we have previously set forth.

Therefore, the commitment in the case of the State of Mon-

tana v. John Clifford Harding is annulled, vacated and set aside; the plea of guilty entered in said cause is annulled, vacated and set aside; and a writ of habeas corpus will issue in this matter unless, within ten days from the date of this opinion, the District Court of the Twelfth Judicial District of the State of Montana, in and for the County of Blaine, shall make and enter an order directing the warden of the state penitentiary to forthwith deliver the said petitioner to the sheriff of Blaine County for further proceedings in said criminal action in accordance with the statutes in such case made and provided.

MR. JUSTICES ADAIR, DOYLE and JOHN C. HARRISON, concur.

MR. JUSTICE CASTLES, dissenting.

I dissent. The majority opinion seems impelled to follow blindly what it considers the Federal Court search for every technical defect in the records of criminal cases that is possible. This trend was furthered in State ex rel. Biebinger v. Ellsworth, 147 Mont. 512, 415 P.2d 728, relied upon in the majority opinion. I dissented in that case. The majority would suggest that the ruling on the requirements of what the District Court records must show as to each "crossing of the t and dotting of the i" is such as to be grounds to set aside convictions on pleas of guilty long years past. It is further suggested that such ruling is *stare decisis*.

However, this Court in State ex rel. Peery v. District Court of the Fourth Judicial District, 145 Mont. 287, 400 P.2d 648; quoting from State ex rel. Sparling v. Hitsman, 99 Mont. 521, 44 P.2d 747, quoted Justice Brandeis that, "in the search for truth through the slow process of inclusion and exclusion, involving trial and error, it behooves us to reject, as guides, the decisions upon such questions which prove to have been mistaken."

In the Biebinger case I called attention to the fact that old records may not always have every conceivable warning of constitutional rights literally recorded. As a matter of fact,

many older cases did not even have Court reporters, as such present.

The Legislature provided among the Maxims of Jurisprudence appearing in Title 49, Chapter 1, that "Any one may waive the advantage of a law intended solely for his benefit. * * *" (R.C.M.1947, section 49-105); and "Acquiescence in error takes away the right of objecting to it." (R.C.M.1947, section 49-108); and "The law respects form less than substance." (R.C.M.1947, section 49-120).

Again, the Legislature in R.C.M.1947, section 93-1301-7 listed presumptions that are satisfactory if uncontradicted. Among them are:

"4. That a person takes ordinary care of his own concerns.

*   *   *   *   *   *   *   *   *   *

"15. That official duty has been regularly performed.

*   *   *   *   *   *   *   *   *   *

"17. That a judicial record, when not conclusive, does still correctly determine or set forth the rights of the parties.

"33. That the law has been obeyed."

*   *   *   *   *   *   *   *   *   *

In the Biebinger case it was stated:

"It is the duty of the district court to inform the defendant not only that he has a right to counsel, but that if he is without means to employ counsel that counsel would be provided for him by the State without cost to him. Too, it is the trial court's duty in taking a plea to inform the defendant of the extent of the penalty provided by law. The record must also show that the provisions of section 94-7801, R.C.M.1947, as to the period of time between plea and sentence have been complied with."

For the foregoing statement containing three new requirements on trial judges, no authority is cited. Since the statement follows a quote from the case of Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70, perhaps it is intended to be an application of the rule from that case. The quote is:

"* * * The record must show, or there must be an allegation

and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Any less is not waiver." See also Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733.

Certainly nowhere from the rule of Carnley v. Cochran can the requirements set up in Biebinger be found. Nor, in an examination of the instant case can anything but an "intelligent and understanding" rejection of the offer (of counsel) be found.

Thus it is seen that this Court goes far beyond the Federal cases in finding technicalities to open the doors of the prison.

Five years have elapsed since Harding admitted to attempted rape and grand larceny and was sentenced upon his plea of guilty to both charges. Harding was already a "loser," having admitted to having a previous felony conviction in Nebraska in 1954 as a burglar. We cannot say then that he was unfamiliar with the legal processes of criminal law.

The recitation of facts contained in the majority opinion come from Harding's own statement in his application for relief. During the attempted rape, after his "advances were repulsed" he became "violent." Just what this violence was we do not know, but the trial court apparently considered the circumstances in meting out a 25 year sentence. Harding also emptied the cash register of some $99.00. He then tried to open the safe where he was apprehended.

Counsel for Harding urges that Harding lacked "intelligence and understanding" because obviously only a fool would do the things he did in the bungling and fumbling manner he did so as to get caught. This causes me to ask whether the law is to protect our citizenry only against intelligent crime and criminals?

Again, it is clear here that Harding was offered legal counsel but rejected the offer. Let us analyze the guidelines of the Federal cases. The constitutional right to counsel does not justify forcing counsel upon an accused who wants none. Moore

v. State of Michigan, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167. The burden of proof is on the petitioner to show that he did not competently and intelligently waive his constitutional right to assistance of counsel. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357. The record must show, or there must be an allegation and evidence which shows, that the accused was offered counsel but intelligently and understandingly rejected the offer. Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70.

It is pointed out in the State's brief that a significant factor here which indicates that the petitioner intelligently and understandingly waived his right to counsel can be found in the fact that he was *caught in the act* of committing the crimes. It is fair to conclude that he knew at the time of his arraignment that the appointment of legal counsel would be of no avail. He chose to waive his right to counsel and throw himself on the mercy of the court. He now reflects, five years later, that the court had no mercy. Actually, his argument is with his sentence and not his lack of counsel.

Differing from the Federal cases, no threat of mob violence is shown as in *Moore;* nor does the record suggest possible defenses, as in *Carnley* and *Moore;* nor does it show a defense, as in Rice v. Olson, 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367. No reason for a lack of intelligent waiver is shown, unless we look to the sentence. And here, we do not have anything but Harding's own version of drunken, bungling, foolish actions to suggest such a lack of intelligence as to negate waiver.

The record shows that Harding was employed and had been for months. His plea now, 5 years later, of indigency hardly seems sufficient. Montana has, long before Gideon, appointed attorneys to represent accused persons whenever the need was manifest or a request made. R.C.M.1947, section 94-6513, has provided for payment of counsel since before the turn of the century.

Reverting now to the Biebinger case, this court made the

strange, in view of its rules previously quoted, statement: "* * * we do not accept the multiple allegations of his petition as being proven to our satisfaction. Particularly as to lack of counsel * * *. We doubt that his plea was caused by ignorance or lack of understanding. The record discloses no duress or fraud being perpetrated against him * * *." Bad as the Biebinger case is, in my view, even it does not go as far as the instant case.

Next I consider what the Biebinger case and the majority in this case put up as a requirement that an accused be informed of the penalty. No authority is cited for this proposition. Of course, neither can I find whether the majority opinion intends to rule on this because it relates that at *least two* of the contentions of petitioner are borne out. Two out of three leaves me to speculate which ones. But I can find no such requirement.

As to the third matter, that sentence was passed on the same day as the plea was taken after the Court inquired whether the defendant was ready to have judgment pronounced at this time and the defendant responded in the affirmative. Neither I, nor the majority, have heretofore dealt with whether on such a post-conviction remedy as habeas corpus a mere procedural defect can be challenged. We have however, held that it cannot. (Application of Banschbach, 133 Mont. 312, 323 P.2d 1112.) Petitioner complains that R.C.M.1947, section 94-7801, was not followed. I would rule that a violation of that section did not violate anything more, even if not specifically waived, than a mere procedural right. On a plea of guilty, the statute provides no starting point because there has been no "verdict." Secondly, a procedural irregularity can be cured by a simple resentence. Thirdly, a procedural irregularity cannot be challenged at this late date by a petition for post conviction relief, even if not treated technically as habeas corpus.

Really, the thrust of the Petition and I believe even the motivating reason behind the majority opinion, if I may so specu-

late, is the length of the sentences, ten and twenty-five years consecutively. It was, as previously suggested, an alleged lack of mercy on the part of the trial judge, that brought this application on. It has nothing to do with guilt or innocence. And, I have tried to express that it really had nothing to do with fundamental rights. This points up and emphasizes the need for a "Sentence Review" procedure as is provided in Senate Bill 20 now being considered by the Legislature. This Court, last December, approved by Order the submission of a new Code of Criminal Procedure to the Legislature containing in its Chapter 25 a judicial procedure for review of sentences only. Such a procedure, if adopted, would allow inquiry into such cases as the instant one, and including it.

For the foregoing reasons, I dissent. On reflection, I believe this Court is going dangerously afield in opening up a search of past records to reveal any possible shortcoming which can be seized upon as a violation of some nebulous right. Along with these so-called rights, isn't there any duty imposed upon a citizen?